Guy W. Gupton, III, Atlanta, Ga., for defendants-appellees.

ON PETITION FOR REHEARING AND
SUGGESTION FOR REHEARING
EN BANC

. (Opinion May 21, 1985, 11th Cir., 1985, 760 F.2d 1252).

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.

BY THE COURT:

A member of this Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in this Court in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by this Court en banc *without* oral argument on a date hereafter to be fixed. The clerk will specify a briefing schedule for the filing of en banc briefs. The previous panel's opinion is hereby VACATED.

**Dori ZARDUI–QUINTANA, et al.,**
**Petitioners-Appellees,**

v.

**Louis M. RICHARD, et al.,**
**Respondents-Appellants.**

**Nos. 85–8299, 85–8361.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 2, 1985.

Nina R. Hickson, Asst. U.S. Atty., Atlanta, Ga., Lauri S. Filppu, Madelyn Johnson, Office of Immigration, Dept. of Justice, Washington, D.C., for respondents-appellants.

William C. Thompson, Jay I. Solomon, Atlanta, Ga., for petitioners-appellees.

Before TJOFLAT and VANCE, Circuit Judges, and ATKINS *, District Judge.

TJOFLAT, Circuit Judge:

## I.

Petitioners are forty-four Mariel Cubans who arrived in the United States illegally as part of the 1980 Freedom Flotilla from Cuba. Many had long records of serious criminal activity in their homeland; all subsequently committed serious crimes in the United States, including murder, rape, armed robbery, and narcotics offenses.[1]

The Immigration and Naturalization Service (INS), believing that the petitioners were not entitled to enter the United States, instituted exclusion hearings, pursuant to 8 U.S.C. § 1226 (1982) and 8 C.F.R. § 236 (1985). In each case, the immigration judge determined that the petitioners were excludable aliens and should be deported to Cuba.[2] Some, but not all, of the forty-four petitioners, pursued appeals from this decision to the Board of Immigration Appeals (BIA).[3]

Shortly thereafter, the United States and Cuba reached an accord whereby a portion of the Marielitos, including the petitioners, would be returned to Cuba in exchange for

---

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Although the "Mariel Boatlift" Cubans were all detained when they arrived in the United States, most of them were eventually paroled into this country and have been given the opportunity to apply for resident status. *See* 8 U.S.C. § 1182(d)(5)(A) (1982). Petitioners, however, had their parole terminated upon the commission of various offenses in this country. At this point they were restored to the status they had at the time of parole. 8 C.F.R. § 212.5(d) (1985). When the district court entered the injunctive order here under review, the petitioners were incarcerated in the Atlanta Federal Penitentiary.

2. These determinations were based on 8 U.S.C. §§ 1182(a)(9) (conviction for a crime of moral turpitude) and 1182(a)(20) (1982) (alien not in possession of a valid unexpired immigrant visa).

3. Some of the petitioners raised asylum, 8 U.S.C. § 1158 (1982), and withholding of deportation, 8 U.S.C. § 1253(h) (1982), issues before the immigration judge. Others failed to do so. We note, however, that this has no effect upon an alien's right to request that the immigration judge, or the BIA, reopen his exclusion hearing on the basis of a request for asylum or withholding of deportation, 8 C.F.R. § 208.11 (1985), and stay his deportation pending disposition of such request.

political prisoners in Cuban jails. The United States government notified the forty-four petitioners that their deportation was imminent. Petitioners, however, resisted deportation, contending that they would be mistreated in Cuba because of their participation in the Mariel Freedom Flotilla.

In an effort to prevent deportation, petitioners filed, pursuant to 8 C.F.R. § 208.11 (1985), individual motions to reopen their exclusion proceedings, with either an immigration judge or the BIA, in which they argued that they were entitled to asylum in the United States or that they should have their deportation withheld. In addition, each petitioner requested the INS district director[4] for a stay of deportation pending the disposition of such motions to reopen their exclusion proceedings. The district director denied the motions; he concluded that the immigration judge or the BIA would deny petitioners' motions to reopen exclusion hearings on the grounds that each of the excludable aliens was ineligible for asylum or withholding of deportation because of his prior criminal conduct. *See* 8 U.S.C. § 1253(h)(2)(B) (1982) and 8 C.F.R. § 208.8(f)(iv) (1985).[5]

█ Petitioners filed a joint habeas corpus petition in the United States District Court for the Northern District of Georgia claiming that the district director acted un-

lawfully in denying their motions for stays,[6] and requesting the court to enjoin the Government from deporting them. The district court granted injunctive relief in the form of a temporary restraining order,[7] because it found that the forty-four petitioners had shown a substantial likelihood of success on the merits of their claim that the district director abused his discretion in finding them ineligible for withholding of deportation under 8 U.S.C. § 1253(h)(2)(B) or (C) (1982).[8] Specifically, the district court found it likely that the district director had abused his discretion by: (1) failing to make separate findings, pursuant to 8 U.S.C. § 1253(h)(2)(B) (1982), that an alien had been convicted of a particularly serious crime in the United States *and* that he constituted a danger to the community; and (2) failing to make sufficient subsidiary findings of fact to support his legal conclusions that the aliens had either committed a particularly serious crime in the United States or had committed a serious non-political crime prior to entering the United States. The Government immediately appealed the district court's order enjoining petitioners' deportation, pursuant to 28 U.S.C. § 1292(a)(1) (1982). Because we find that the district director lacked the authority to grant stays of deportation in this case, we decline to address either of these questions.[9]

---

4. District directors "are responsible for the administration and enforcement of the Act and all other laws relating to immigration and naturalization within their assigned geographic areas of activity unless any such power and authority is required to be exercised by higher authority or has been exclusively delegated to another immigration official or class of immigration officer." 8 C.F.R. § 100.2(e) (1985).

5. The relevant portions of these provisions are set out *infra* notes 16–17.

6. The district court had subject matter jurisdiction over the petition pursuant to 8 U.S.C. § 1329 (1982), and 28 U.S.C. § 1331 (1982).

7. We treat the district court's order not as a temporary restraining order but as a preliminary injunction because it granted the petitioners the very affirmative relief they sought before the district director, a stay of deportation. In no respect was the district court's order de-

signed to preserve the status *quo ante*, for absent the order the district director was required to obey an existing exclusion order. This court's jurisdiction, therefore, is based upon 28 U.S.C. § 1292(a)(1) (1982) under which preliminary injunctions are reviewable, even when characterized as temporary restraining orders. *See Fernandez-Roque v. Smith*, 671 F.2d 426, 429–31 (11th Cir.1982).

8. The district court's conclusions were based upon the assumption that the district director had the power to grant the relief requested by the petitioners. As we shall make clear, the district director had no such authority.

9. By an order entered May 7, 1985, we granted the Government permission to take an appeal, No. 85–8361, pursuant to 28 U.S.C. § 1292(b) (1982), from the district court's orders of April 24 and 25, 1985 certifying certain questions for interlocutory review. Our decision today, however, makes a review of these questions unnec-

## II.

### A.

■ We note at the outset that a district court's grant of a preliminary injunction is reviewable only for abuse of discretion. *United States v. Jefferson County,* 720 F.2d 1511, 1519 (11th Cir.1983). That discretion is guided by four prerequisites. The movant must show: (1) a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest. *Id.* at 1519; *West Point-Pepperell, Inc. v. Donovan,* 689 F.2d 950, 956 (11th Cir.1982); *Southern Monorail Co. v. Robbins & Myers, Inc.,* 666 F.2d 185, 186 (11th Cir. 1982). "The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson County,* 720 F.2d at 1519 (quoting *Canal Authority v. Callaway,* 489 F.2d 567, 573 (5th Cir.1974)). The lower court abused its discretion in granting a preliminary injunction in this case because petitioners failed to make the requisite showing that they were likely to succeed on the merits.

### B.

■ An investigation of the statutory and regulatory framework of exclusion procedures shows that the powers of the district director to stay the deportation of excluded aliens is limited to special circum-

stances not present in this case. Further, the district director is entirely powerless to grant asylum or withhold deportation once exclusion proceedings have commenced. Petitioners, therefore, had no chance to prevail on the merits of their claim that the district director should have stayed their deportation, and thus the district court abused its discretion in granting a. preliminary injunction.

■ We begin our discussion with an examination of the powers and duties of the district director [10] and the immigration judge in the context of exclusion proceedings. An alien arriving at a port of the United States may be examined by an immigration officer. 8 U.S.C. § 1225(a) (1982); 8 C.F.R. § 235.1 (1985). If the examining officer is unable to find that the alien is "clearly and beyond a doubt" entitled to enter into the United States, he must detain him for further inquiry before an immigration judge.[11] Pursuant to 8 U.S.C. § 1226(a) (1982) and 8 C.F.R. § 236.2 (1985) the immigration judge conducts a formal hearing, including the presentation of evidence and testimony under oath. The immigration judge's decision as to exclusion is final, 8 C.F.R. § 236.6 (1985), unless the alien or the district director appeals to the BIA. If the BIA finds the alien excludable, the alien's only avenue of review is before the appropriate district court. 8 U.S.C. § 1105a(b) (1982). Once the determination to exclude an alien becomes final, the district director in charge of the alien must immediately deport him. 8 U.S.C. § 1227(a) (1982); 8 C.F.R. § 237 (1985). The district director may only exercise his discretion not to deport an excluded alien in

---

essary and inappropriate, as we have found that the district director did not have authority to stay or withhold the deportation of the petitioners. We therefore vacate our May 7 order as improvidently entered.

**10.** The statutory scheme invests power in the Attorney General to prescribe procedures for exclusion proceedings, 8 U.S.C. § 1226(a) (1982), asylum requests, 8 U.S.C. § 1158 (1982), and applications for withholding of deportation, 8 U.S.C. § 1253(h) (1982). *See also* 8 U.S.C. § 1103 (1982). The powers of the district di-

rector, therefore, derive from the delegation by the Attorney General of his authority as defined by statute.

**11.** The regulations provide that, upon detaining the alien for further inquiry before an immigration judge, the district director must immediately sign and deliver to the alien a Notice to Alien Detained for Hearing by an Immigration Judge. The alien must then be advised of his right to representation by counsel and of the availability of certain free legal services. 8 C.F.R. § 235.6 (1985).

two limited situations: (1) where he concludes that immediate deportation is not practicable or proper (for example, where transportation cannot be arranged),[12] or (2) where the Attorney General determines that the alien's testimony on behalf of the United States is necessary for prosecution of violations of the law. 8 U.S.C. § 1227(a), (d) (1982); 8 C.F.R. § 237.1 (1985).[13]

■ In the case before us, petitioners were determined to be excludable by a final administrative order. Thus, the power of the district director to grant a stay of deportation was limited to situations where deportation would be impractical or the Attorney General has indicated that the alien's testimony is needed in a criminal prosecution. Neither instance was involved in this case. Indeed, it was because Cuba had agreed to receive petitioners, and the United States had made arrangements to transport them to Cuba, that the petitioners moved to reopen their exclusion hearings. As such, the motions before the district director to stay the deportation were properly denied.[14] This is not to say

12. This provision clearly refers to the travel and maintenance aspects of deportation. Placed under the heading of "Maintenance Expenses," the provision deals with the type of accommodations used in deporting the alien as well as who should bear the maintenance cost incurred during the alien's detention. The statute provides that:

> (a) Maintenance expenses
>   (1) Any alien (other than an alien crewman) arriving in the United States who is excluded under this chapter, shall be immediately deported, in accommodations of the same class in which he arrived, unless the Attorney General in an individual case, in his discretion, concludes that immediate deportation is not practicable or proper.

8 U.S.C. § 1227(a) (1982).

The discretion of the Attorney General to delay deportation is limited to a determination of the propriety and practicality of deporting the alien by means of accommodations "of the same class in which he arrived." For a discussion of the economic and logistic concerns motivating the passage of the provision, see H.R.Rep. No. 1365, 82d Cong., 2d Sess. 135, *reprinted in* 1952 U.S.Code & Ad.News 1653, 1720.

In his concurrence Judge Vance interprets section 1227(a) as vesting unbridled discretion in the district director to grant stays of deportation of excluded aliens in any situation in which the district director deems it appropriate. Although the district director has such power in situations involving findings of deportability, 8 C.F.R. § 243.4 (1985), the regulations have restricted such power where an alien has been held excludable. Under 8 C.F.R. § 237.1 (1985) the district director may stay the deportation of an excluded alien pursuant to 8 U.S.C. § 1227(a), (d) (1982). Subsection (d) empowers the Attorney General to stay the deportation of an excludable alien in limited situations where the testimony of the alien is necessary on behalf of the United States in a criminal prosecution. Judge Vance's interpretation of section 1227(a), however, would make the language in section 1227(d) superfluous since staying the deportation of a government witness would clearly come under the district director's broad powers as Judge Vance interprets them. In addition, Judge Vance's reading of section 1227(a) effectively rewrites 8 C.F.R. § 243.4 (1985) to empower the district director to grant stays of deportation in cases involving not only deportable aliens, but excluded aliens as well. We read section 1227(a) more narrowly to embrace only situations involving travel and maintenance expenses. Such an interpretation is consistent with the language of section 1227(a) and 8 C.F.R. § 243.4 (1985), while it also acknowledges the efficacy of section 1227(d).

13. When deportation is ordered for reasons other than a finding of excludability, the district director's powers are much broader; he, "in his discretion, may grant a stay of deportation for such time and under such conditions as he may deem appropriate." 8 C.F.R. § 243.4 (1985). Petitioners cite this regulation as the authority by which the district director could grant the relief requested in this case. But read in conjunction with 8 C.F.R. § 237.1 (1985), which limits the power to stay where the alien is found excludable, it is clear that 8 C.F.R. § 243.4 (1985) is inapplicable in this case.

14. We are aware that the district director did not seem to base his denials of the requests for stays upon these limitations of his stay power. Rather, he concluded that the immigration judge would deny the aliens' requests for stays of deportation and motions to reopen the exclusion proceedings pursuant to 8 C.F.R. § 208.11 (1985). So finding, he denied their requests for stays. The fact, however, that the district director produced the wrong reason for a proper dismissal did not render the grant of a preliminary injunction in these circumstances any less an abuse of discretion. By enjoining the Government from deporting petitioners, the district court produced a result that was beyond the power of the district director to orchestrate. Therefore, although the proper reasons for the denials of the requests for stays were not given

that a stay can never be granted in the deportation of excluded aliens. The immigration judge and the BIA have the power to stay the deportation of an excluded alien upon a motion to reopen the exclusion proceeding.[15] Although the filing of such a motion does not automatically stay the execution of the outstanding exclusion order, the judge (or the BIA) having jurisdiction over the motion may, in his discretion, grant a stay of deportation. 8 C.F.R. § 103.5 (1985). That no such stays were granted in this case underscores the belief of the immigration judge that the petitioners' requests for asylum and withholding of deportation were frivolous.

Further, in our view of the statutory and regulatory framework of exclusion proceedings and asylum or withholding of deportation requests, the district director was unable to grant any relief other than a stay of deportation for the limited purposes mentioned above. The Immigration and Nationality Act contains two provisions whereby aliens may resist deportation to countries where their life or freedom would be threatened because of their political opinion: 8 U.S.C. § 1158 (1982),[16] providing that an alien subject to exclusion from the United States may apply for asylum, and 8 U.S.C. § 1253(h) (1982),[17] preventing the deportation of an alien to a country if the Attorney General determines that the alien's life or freedom will be threatened because of his political opinion. Under the regulatory scheme created by the Attorney General,[18] jurisdiction over any application for asylum made prior to the commencement of exclusion proceedings lies with the district director having jurisdiction over the port of entry. 8 C.F.R. § 208.1(a) (1985). However, once an alien has been served a notice of referral to exclusion proceedings,

---

by the district director, the denials were correct and should not have been disturbed by the district court.

**15.** An alien may request that an exclusion proceeding be reopened for proper cause pursuant to 8 C.F.R. § 103.5 (1985).

**16.** 8 U.S.C. § 1158 (1982) provides:

§ 1158. Asylum procedure

(a) Establishment by Attorney General: coverage

The Attorney General shall establish a procedure for an alien physically present in the United States or at a land border or port of entry, irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.
8 C.F.R. § 208.8(f) (1985), provides in pertinent part:

(f) *Denial*—(1) *General.* The district director shall deny a request for asylum or extension of asylum status if it is determined that the alien:

....

(iv) The alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States;

(v) There are serious reasons for considering that the alien has committed a serious non-political crime outside the United States prior to the arrival of the alien in the United States....

Though the regulations do not specifically delineate the factors to be taken into account by the immigration judge in denying asylum requests, it can be assumed that they are identical to those applicable to district directors.

**17.** 8 U.S.C. § 1253(h) (1982) provides:

(h) Withholding of deportation or return

(1) the Attorney General shall not deport or return any alien (other than an alien described in section 1251(a)(19) of this title) to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

(2) Paragraph (1) shall not apply to any alien if the Attorney General determines that—

(A) the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion;

(B) the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States;

(C) there are serious reasons for considering that the alien has committed a serious non-political crime outside the United States prior to the arrival of the alien in the United States; or

(D) there are reasonable grounds for regarding the alien as a danger to the security of the United States.

**18.** *See supra* note 10.

the immigration judge has exclusive jurisdiction over the asylum application. 8 C.F.R. § 208.1(b) (1985).[19] An alien may request asylum after the completion of an exclusion hearing. The regulations provide that this be done through a motion to reopen the exclusion proceedings to address the asylum request. 8 C.F.R. § 208.11 (1985).[20] It seems clear that read as a whole the regulations contemplate that, once exclusion proceedings begin, authority to grant asylum requests rests in the immigration judge, not the district director. Since all the petitioners were recipients of exclusion hearings, they cannot object to the district director's failure to grant them asylum.

■ Petitioners do contend, however, that the district director should have granted their request for the withholding of exclusion pursuant to 8 U.S.C. § 1253(h) (1982). The Attorney General has delegated his authority to grant withholding of deportation in exclusion cases to the immigration judge. 8 C.F.R. §§ 208.3(b), 208.11 (1985); 8 C.F.R. § 242.8(a) (1985) (general authority in deportation cases). Unlike asylum procedures where the district director does have authority to grant requests made prior to exclusion hearings, the regulations fail to delegate to the district director any power at all to withhold the deportation of an excluded alien. The reason for this is clear. Applications to withhold deportation will only be made during or after the determination of an alien's deportability; or put in the context of the present case, such an application will only be made during or after the exclusion proceeding. The regulations clearly contemplate treating applications to withhold deportations in a like manner to asylum requests made during or after exclusion hearings. For instance, under 8 C.F.R. § 208.3(b) (1985), asylum requests made after the initiation of exclusion proceedings shall automatically be considered as requests for withholding of deportation. In addition, applications for withholding of deportation made after the conclusion of exclusion hearings are handled in the same manner as late asylum requests: the alien must move to reopen the exclusion proceedings. 8 C.F.R. § 208.11 (1985). It would be anomalous to find, given the regulatory parallelism between asylum and withholding of deportation, that although asylum requests made after the commencement of exclusion hearings are the exclusive domain of the immigration judge, applications for withholding of deportation made at the same time may be granted by the district director. Nothing in the regulations suggests that this be so; rather, the regulations clearly contemplate that applications for withholding of deportation be procedurally identical to asylum requests. Judicial economy is certainly served by this result. Since the immigration judge will have all the evidence before him concerning an asylum request, and such requests involve considerations similar to those present in applications to withhold deportation,[21] common sense suggests that he alone make both determinations. Further, in that the regulations specifically grant the immigration judge power to grant or deny applications to withhold deportation, allowing the district director like authority may create contradictory results and mass confusion in the immigration process. For these rea-

19. Where prior to an exclusion hearing the district director has denied an alien's request for asylum, the alien may renew his request before an immigration judge in the exclusion proceedings. 8 C.F.R. § 208.9 (1985). Further, where an asylum request is filed with the district director but is unadjudicated at the time exclusion proceedings commence, the request must be resubmitted to the immigration judge. 8 C.F.R. § 208.1(b) (1985).

20. An alien's request to reopen the exclusion hearing must reasonably explain his failure to request asylum prior to the completion of that

hearing. Without such an explanation, the request shall be considered frivolous, absent evidence to the contrary. 8 C.F.R. § 208.11 (1985). Petitioners moved to reopen their exclusion hearings but their motions have been denied on the grounds that they are ineligible for asylum or withholding of deportation, pursuant to 8 U.S.C. § 1253(h)(2)(B) (1982) and 8 C.F.R. § 208.8(f)(iv) (1985), because of their criminal activity.

21. *See supra* notes 16–17.

sons we construe the regulatory framework as granting to the immigration judge *exclusive* jurisdiction over applications to withhold the deportation of excludable aliens. The district director in the present case had no authority to grant an application to withhold deportation and therefore the application was properly denied. The application would properly have been before an immigration judge who had granted a reopening of the exclusion hearing.[22]

The district director, then, having no power to grant a stay of deportation under the circumstances present in this case, and having no authority to grant a withholding of deportation, properly denied the relief sought by the petitioners. This absence of power clearly made petitioners' success on the merits most unlikely, and it was therefore an abuse of discretion for the district court to grant a preliminary injunction. Its order enjoining the district director from deporting petitioners must, accordingly, be vacated. For the reasons we have given, the injunctive order in No. 85–8299 and the order granting leave to appeal in No. 85–8361 are

VACATED.

VANCE, Circuit Judge, concurring in result:

I concur in the result reached by my colleagues in vacating the injunctive relief granted by the district court, but I would do so by reaching the merits of petitioners' claims. In concluding that in this instance the INS district director lacked authority to grant a stay of deportation, my colleagues are effectively holding that the Attorney General, himself, was without authority to stay these deportations. I cannot agree with this holding.

By 8 C.F.R. § 237.1, the Attorney General has delegated all his authority under 8 U.S.C. § 1227(a) to the district director. Section 1227(a) empowers the Attorney General to stay deportation of an excluda-

ble alien whenever he concludes that "immediate deportation is not practicable or *proper.*" (emphasis added). This plenary grant of authority from Congress to the Attorney General makes no mention of any specific factors that the Attorney General is to consider when determining whether immediate deportation is proper. To narrowly construe this broad delegation of authority as allowing the Attorney General or his delegated agent, the district director, to stay deportations under section 1227(a) only when suitable transportation cannot be arranged, seems totally inconsistent with this court's previous decisions recognizing the broad authority granted the Attorney General in immigration matters. *See Garcia-Mir v. Smith,* 766 F.2d 1478, 1484 (11th Cir.1985); *Jean v. Nelson,* 727 F.2d 957, 975–79 (11th Cir.1984), *aff'd,* —— U.S. ——, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985). Because 8 C.F.R. § 237.1 empowers the district director to entertain motions for stays of deportation under circumstances such as these, I consider the merits of petitioners' claims.

The district court's orders enjoin the government from deporting any of the forty-four excludable aliens who are the petitioners in these cases. By its April 24 and 25, 1985 orders[1] the district court certified the following two controlling questions of law for interlocutory appeal pursuant to 28 U.S.C. § 1292(b):

(1) Does 8 U.S.C. § 1253(h)(2)(B) contemplate two separate findings; namely, that the alien has been convicted of a "particularly serious crime" *and* that he "constitutes a danger to the community?"

(2) Is a mere "parroting" of 8 U.S.C. § 1253(h)(2)(B) or (C) by the District Director or the BIA sufficient under the abuse of discretion standard or do these officials have to make subsidiary findings of fact which support their legal conclusions?

---

**22.** 8 C.F.R. § 208.11 (1985). *See also supra* note 19.

**1.** I agree with the majority that the district court's orders were preliminary injunctions reviewable under 28 U.S.C. § 1292(a)(1).

The petitioners in these cases are presently incarcerated in the Atlanta Federal Penitentiary. They are excludable aliens who have been notified by the government that their deportation to Cuba is imminent. They all have motions to reopen their orders of exclusion to consider their asylum claims now pending before the INS.[2] After their requests for stays of deportation were denied by the district director, they filed individual petitions for writs of habeas corpus in district court.

The district director denied the motions for stays of deportation because he determined that no petitioner had shown a realistic likelihood of success on his motion to reopen his exclusion order. In reaching this conclusion the district director determined that each of the excludable aliens was ineligible for asylum or withholding of deportation because of his prior criminal conduct. *See* 8 U.S.C. §§ 1253(h)(2)(B) & (C). The district court granted the temporary restraining orders because it found that the forty-four petitioners had shown a substantial likelihood of success on the merits of their claim that the district director abused his discretion in finding them ineligible for asylum under either 8 U.S.C. § 1253(h)(2)(B) or § 1253(h)(2)(C). Specifically, the district court found it likely that the district director had abused his discretion by: (1) failing to make separate findings, pursuant to 8 U.S.C. § 1253(h)(2)(B), that an alien had been convicted of a particularly serious crime in the United States *and* that he constituted a danger to the community; and (2) failing to make sufficient subsidiary findings of fact to support his legal conclusions that the aliens had either committed a particularly serious crime in the United States or had committed a serious non-political crime prior to entering the United States.

A stay of deportation is a form of relief which the Attorney General may grant or deny an excludable alien at his discretion. By regulation, the Attorney General has delegated his authority to grant stays of deportation to the local district director. 8 C.F.R. § 237.1. In immigration matters, this court has long recognized that when reviewing the administrative denial of a discretionary form of relief "[t]he inquiry goes to the question whether or not there has been an exercise of administrative discretion and, if so, whether or not the manner of exercise has been arbitrary or capricious." *Chokloikaew v. INS*, 601 F.2d 216, 218 (5th Cir.1979) (quoting *Paul v. INS*, 521 F.2d 194, 197 (5th Cir.1975)). *See generally Jean v. Nelson*, 727 F.2d at 975–79 (discussing the extremely limited scope of judicial review in matters of immigration that have been committed solely to the discretion of executive officials). Judicial inquiry therefore is limited here to whether the district director acted arbitrarily and capriciously in concluding that the petitioners had no real likelihood of succeeding on their motions to reopen their orders of exclusion and in denying the motions for stays of deportation.

The first question certified by the district court pursuant to 28 U.S.C. § 1292(b) is:

Does 8 U.S.C. § 1253(h)(2)(B) contemplate two separate findings; namely, that the alien has been convicted of a "particularly serious crime" *and* that he "constitutes a danger to the community?"

The district court concluded that the statute required separate determinations as to whether the petitioner had been convicted of a particularly serious crime and whether he constituted a danger to the community. The government argues that the statute does not require a separate determination that the petitioner is a danger to the community if the district director determines that he has been convicted of a particularly serious crime. In forty-one of the forty-four petitions now before us, the district director found that the petitioner had been convicted of a particularly serious crime in the United States but made no separate

finding as to whether the petitioner constituted a danger to the community.[3]

After examining the language used in the statute, I conclude that it does not require a district director to make a separate finding that the alien constitutes a danger to the community after the director determines that an alien has been convicted of a particularly serious crime. In pertinent part, section 1253(h)(2)(B) provides that the asylum or withholding of deportation provisions of section 1253(h)(1) shall not apply to any alien if the Attorney General determines that "the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States; ...." As with all questions of statutory interpretation, we first look to the plain meaning of the language used in the statute. *See United States v. Martino,* 681 F.2d 952, 954 (5th Cir.1982) (en banc), *aff'd,* 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). It seems plain that the statute, on its face, does not contemplate two separate findings. If Congress had intended that the director make two separate findings, it could have easily manifested its intent by simply connecting the two clauses with the conjunction "and." Instead, the grammatical construction creates a cause and effect relationship between the clauses which indicates that conviction of a particularly serious crime is the sole factor that Congress has made determinative of whether the alien constitutes a danger to the community. The legislative history of section 1253(h)(2)(B) also supports this interpretation. Under the Refugee Act of 1980, section 1253(h) was amended to conform with Article 33 of the Protocol Relating to the Status of Refugees ("Protocol").[4]

*See INS v. Stevic,* —— U.S. ——, 104 S.Ct. 2489, 2496–97, 81 L.Ed.2d 321 (1984). Article 33 of the Protocol, known as the *nonrefoulment* provision, prohibits expelling or returning a refugee to a territory where his life would be threatened. According to the House Judiciary Committee Report, the amended version of section 1253(h) would prohibit those aliens "who have been convicted of particularly serious crimes which make them a danger to the community of the United States" from obtaining asylum or withholding of deportation. H.R.Rep. No. 608, 96th Cong., 1st Sess. 18 (1979).[5] The clear implication of this language is that conviction of a particularly serious crime makes an alien a danger to the community. This is consistent with the interpretation given Article 33 of the Convention and Protocol by other commentators. *See* N. Robinson, Convention Relating to the Status of Refugees: Its History, Contents and Interpretation 29 (Institute of Jewish Affairs 1953); Note, *The Right of Asylum Under United States Law,* 80 Colum.L.Rev. 1125, 1127 (1980). Since the language of the statute and its legislative history indicate that Congress never meant to require separate determinations of conviction of a particularly serious crime and dangerousness to the community under section 1253(h)(2)(B), the district court erred in holding to the contrary.

This conclusion is further bolstered by consideration of the practical problems that would arise if the district director were required to make a specific determination of an alien's dangerousness. A separate determination of an alien's potential dangerousness would require a prediction as to an alien's potential for recidivism and

---

**3.** The other three petitioners were found to have committed serious non-political crimes prior to their entry to the United States and thus were found ineligible for asylum pursuant to 8 U.S.C. § 1253(h)(2)(C). Dangerousness to the community is irrelevant under section 1253(h)(2)(C).

**4.** 19 U.S.T. 6223, T.I.A.S. No. 6577, 606 U.N.T.S. 268 (1968). The Protocol incorporated by reference various provisions of the 1951 Convention Relating to the Status of Refugees ("Convention"), No. 2545, 189 U.N.T.S. 137 (July 28,

1951). Article 33 of the Protocol was taken directly from the Convention.

**5.** Although an amended Senate version of the Refugee Act was passed in lieu of the House's version, the Senate accepted the House's section 1253(h) language with the understanding that it was based directly on the language of the Protocol. S.Conf.Rep., No. 590, 96th Cong., 2d Sess. 20 (1980), U.S.Code Cong. & Admin.News 1980, p. 141.

would lead to extensive, drawn-out hearings complete with psychological evaluations and expert testimony. Congress certainly was aware of these potential problems and its failure to address them suggests that it did not intend to burden stays of deportation hearings involving excludable aliens with such complexities.

The district court also certified the following question:

> Is a mere "parroting" of 8 U.S.C. § 1253(h)(2)(B) or (C) by the District Director or the BIA sufficient under the abuse of discretion standard or do these officials have to make subsidiary findings of fact which support their legal conclusions?

To reiterate, the appropriate standard for judicial review of a denial of a stay of deportation is whether the Attorney General through the district director, has exercised his discretion arbitrarily or capriciously. A district director, therefore, need only make such findings of fact as are necessary to enable a court to determine whether he has acted arbitrarily or capriciously in denying the stay of deportation. From my reading of sections 1253(h)(2)(B) & (C) and the accompanying regulations, I do not conclude that the district director is required to make detailed subsidiary findings of fact to support his legal conclusions. *See generally Overton Park v. Volpe,* 401 U.S. 402, 409-417, 91 S.Ct. 814, 820-824, 28 L.Ed.2d 136 (1971) (administrative agency need not always accompany its decisions with formal findings of fact). While detailed subsidiary findings of fact would obviously assist the court in carrying out its review function, such detailed findings are neither required nor necessary in this instance. When administrative discretion is exercised findings are sufficient if the written decision of the administrative agency or the record of the administrative hearing sets out clearly the ground which forms the basis for the denial of the discretionary relief, so that a reviewing court is able to ascertain whether the decision is arbitrary or capricious. *See Jarecha v. INS,* 417 F.2d 220, 225 (5th Cir.1969). In each of the cases before the court, the district director

has set out clearly the convictions which form the basis for his conclusion that the aliens will be ineligible for asylum under either 8 U.S.C. § 1253(h)(2)(B) or § 1253(h)(2)(C). His findings, therefore, are sufficient to enable a reviewing court to determine whether he has acted arbitrarily or capriciously in denying the stays of deportation.

A review of the record shows that the district director did not act arbitrarily or capriciously in finding that the petitioners had failed to demonstrate a likelihood of succeeding on their motions to reopen their exclusion orders. This finding is bolstered by his additional finding that all the petitioners had either been convicted of particularly serious crimes in the United States or had committed serious non-political crimes prior to entering the United States. The district director therefore did not act arbitrarily or capriciously in denying the motions for stays of deportation.