Jairon Antonio SEQUEIRA–
BALMACEDA,
Plaintiff,

v.

Janet RENO, as Attorney General
of the United States, et al.,
Defendants.

No. CIV. A. 199CV3323–TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 6, 2000.

Charles H. Kuck, Schwartz Kuck & Associates, Atlanta, GA, for Jairon Antonio Sequeira–Balmaceda, petitioners.

Curtis Eugene Anderson, Lori M. Beranek, Office of United States Attorney, Atlanta, GA, for Janet Reno, Attorney General of the United States, Doris Meissner, Commossioner of the Immigration and Naturalization Service, Fred Alexander, Acting District Director of the Immigra-

tion and Naturalization Service, Juan Campos, Assistant District Director, Detention and Deportation, respondents.

## ORDER

THRASH, District Judge.

This is a habeas corpus action brought pursuant to 28 U.S.C. § 2241. Following an emergency hearing on December 24, 1999, and after careful consideration of the arguments presented by both parties, this Court declined to issue the writ and directed entry of judgment in favor of the Defendants. This written order is entered to explain fully the basis for the decision at the emergency hearing.

## I. BACKGROUND

Petitioner is a citizen of Nicaragua. Following a request for political asylum, he became a lawful permanent resident of the United States on December 1, 1989. Petitioner is currently in the physical custody of the Atlanta District Office of the United States Immigration and Naturalization Service ("INS") at the DeKalb County, Georgia, Jail. The pertinent facts surrounding the petition for habeas corpus are as follows:

On July 21, 1996, Petitioner allegedly placed his hands on the breasts and between the legs of a minor female, and then got in a fight with one of her relatives. During that fight, which occurred while Petitioner was intoxicated, Petitioner allegedly choked the other individual around the neck and struck him in the face. As a result of this July 21, 1996, incident, Petitioner was convicted on May 27, 1997, in the Superior Court of Gwinnett County, Georgia, of child molestation in violation of O.C.G.A. § 16–6–4. Based on this conviction, INS began removal proceedings against Petitioner. Petitioner thereafter filed a petition for a writ of habeas corpus, pursuant to O.C.G.A. § 9–14–49, in the Superior Court of Gwinnett County. In the petition, he alleged that he did not knowingly, intelligently, or voluntarily enter a guilty plea on the child molestation charge. On May 19, 1999, the Gwinnett

Superior Court granted Petitioner's habeas corpus petition, vacated the child molestation conviction, and ordered that Petitioner be removed from the state's sex offender registration list. The removal proceedings that INS had instituted against Petitioner were terminated following the Superior Court's decision to vacate the child molestation conviction. On September 7, 1999, Petitioner was re-indicted. Petitioner pled guilty to four offenses alleged in the new indictment. Counts One and Two charged him with simple battery in violation of O.C.G.A. § 16–5–23. Count Three charged him with committing an affray in violation of O.C.G.A. § 16–11–32. Count Four charged him with public drunkenness in violation of O.C.G.A. § 16–11–41. Petitioner was sentenced to 11 months and 29 days for each count, with the sentences to run consecutively.

On October 27, 1999, INS reinstituted removal proceedings against Petitioner. The removal proceedings were heard by United States Immigration Judge William A. Cassidy. Petitioner admitted all factual allegations but moved the Immigration Judge to terminate the removal proceedings against him on the grounds that (1) the child molestation conviction was properly vacated and (2) the convictions for simple battery do not amount to an aggravated felony or crime involving moral turpitude. Judge Cassidy agreed with Petitioner's contentions and filed a written order on December 23, 1999, granting Petitioner's Motion to Terminate. Following Judge Cassidy's order, Petitioner that same day filed with this Court a petition for a writ of habeas corpus and an accompanying motion for an emergency hearing on the Petition. An emergency hearing was held at 5:00 p.m. on December 23, at which time the government requested a continuance until the next morning to prepare a response to the Petition. The Court granted the government's request for a continuance and rescheduled the hearing for 9:30 a.m., December 24, 1999. Both parties filed additional briefs with the Court that

evening and early the next morning. At the conclusion of the emergency hearing held on December 24, the Court denied the petition for a writ of habeas corpus on the grounds of lack of jurisdiction and failure to exhaust administrative remedies.

## II. DISCUSSION

### A. SUBJECT MATTER JURISDICTION.

As stated at the December 24 hearing, the Court concludes that it does not possess subject matter jurisdiction to review Petitioner's detention pending further proceedings in the removal action. This conclusion is reached after careful review of two recent decisions of the United States Court of Appeals for the Eleventh Circuit. Both cases deal with the jurisdiction of district courts of habeas corpus petitions brought by aliens in the course of removal proceedings. Petitioner contends that the recent Eleventh Circuit decision *Mayers v. United States Department of Immigration and Naturalization Service,* 175 F.3d 1289, 1299 (11th Cir.1999), is controlling and requires the Court to grant his habeas petition. In *Mayers,* the Eleventh Circuit ruled that removal proceedings for aliens commencing before April 1, 1997, are governed by the transitional provisions of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") instead of its permanent provisions. *Mayers,* at 1293 n. 4, 1297, 1301 (citing IIRIRA § 309(c)(1) set out as a note following 8 U.S.C.A. § 1101 (West 1999)). According to *Mayers'* interpretation of IIRIRA's transitional rules, "judicial review for most aliens is to take place without regard to IIRIRA's amendments." *Id.* at 1293. Accordingly, the district courts may exercise subject matter jurisdiction over an alien's habeas corpus petition if the removal proceedings commenced before April 1, 1997. *Id.* at 1301.

The government argues that the Eleventh Circuit's even more recent decision in *Richardson v. Reno,* 180 F.3d 1311, 1315 (11th Cir.1999) ("*Richardson II*"), and not

*Mayers,* is the controlling authority in this case and precludes this Court from considering Petitioner's petition for a writ of habeas corpus. In *Richardson II,* the Eleventh Circuit held that the permanent provisions of IIRIRA preclude the district courts from exercising subject matter jurisdiction over any habeas corpus petition by an alien that challenges a removal order, removal proceedings, or detention pending removal. *Id.* According to the government, *Mayers* applies only to removal proceedings governed by IIRIRA's transitional provisions, while *Richardson II* applies to removal proceedings governed by IIRIRA's permanent provisions. The government contends that because removal proceedings against Petitioner in this case were instituted by INS after April 1, 1997, the permanent provisions of IIRIRA apply, and those provisions forbid this Court from exercising subject matter jurisdiction over Petitioner's habeas corpus case.

After careful review of the two cases, the Court concludes that the government is correct that the permanent provisions of IIRIRA apply in this case. INS did not institute even the first set of removal proceedings against Petitioner until after his original May 27, 1997, conviction, much less the removal proceedings that are pending presently, which were commenced October 27, 1999. Petitioner's case, therefore, is governed by the jurisdictional requirements of IIRIRA's permanent provisions. Because the permanent provisions of IIRIRA apply here, the Eleventh Circuit's decision in *Richardson II* controls, and *Mayers* is inapplicable. The Eleventh Circuit's holding in *Mayers* applies only to removal proceedings that occurred during the transition period between the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and IIRIRA's effective date. Indeed, the *Mayers* and *Richardson II* courts emphatically noted at numerous points throughout both opinions, and in formulating their respective holdings, that a distinction exists between IIRIRA's transitional and perma-

nent provisions. *See Mayers*, 175 F.3d at 1298 ("[T]he permanent rules of IIRIRA do not apply in the present case."), 1298 n. 11 ("[T]he petitioner in *Richardson* came under the permanent rules of IIRI-RA...."), 1301 ("We hold that for aliens whose petitions fall within the purview of IIRIRA's transitional rules and who seek review of a final order of deportation, AEDPA's elimination of § 106(a)(10)'s grant of habeas jurisdiction does not extend to eliminate the federal habeas jurisdiction previously available under 28 U.S.C. § 2241.") and 1301 n. 16 ("We note, again, the distinction with our holding in *Richardson*, which based its analysis of the availability of habeas corpus jurisdiction on IIRIRA § 242(g), a provision that does not apply to the petitioners here who seek review of a final order of deportation under IIRIRA's transitional rules."); *Richardson II*, 180 F.3d at 1316 n. 6 ("However, *Mayers* was decided under IIRIRA's transitional rules.... Indeed, this Court in *Mayers* emphatically noted several times that the holding in *Mayers* did not conflict with *Richardson I* because IIRIRA's permanent provisions applied in *Richardson I*.").

■ *Richardson II*'s interpretation of IIRIRA's permanent provisions precludes this Court from exercising subject matter jurisdiction over Petitioner's habeas corpus petition. *Richardson II* holds that the permanent provisions of IIRIRA preclude a district court from exercising habeas corpus jurisdiction over an alien's petition that challenges "removal orders, removal proceedings, and detention pending removal." *Richardson II*, 180 F.3d at 1315. Despite Petitioner's invitation for this Court to read the *Richardson II* decision narrowly so as to render it meaningless in this case, the Court cannot ignore *Richardson II*'s broad holding, especially since the Eleventh Circuit later in the opinion specifically explained the breadth of its holding by stating that "it applies to 'any action taken or proceeding brought to remove an alien.'" *Id.* at 1318. To this Court, the language of the Eleventh Circuit is clear and unmistakable and puts

this Court on notice that it cannot exercise jurisdiction over the subject matter of this case in which Petitioner seeks a writ of habeas corpus based on removal proceedings instituted by INS. If the Eleventh Circuit had meant to limit the holding of *Richardson II*, the Court believes that it would have said so more explicitly and would not have used such sweeping and unequivocal language in the opinion. Therefore, following controlling Eleventh Circuit authority, the Court has no choice but to deny the Petition for lack of subject matter jurisdiction.

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

■ Even if this Court did possess jurisdiction over the subject matter of this case, the Court still would not issue the writ of habeas corpus because Petitioner has failed to exhaust his administrative remedies. The doctrine of exhaustion of administrative remedies in general provides that a party may not seek judicial relief in the federal courts until he has first sought all possible relief within the agency itself. *Guitard v. United States Secretary of Navy*, 967 F.2d 737, 740 (2d Cir.1992) (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938)). The requirement of exhaustion may arise either from explicit statutory language or an administrative scheme that provides for agency relief. *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 592 (2d Cir. 1993). If a party fails to exhaust administrative remedies before seeking redress in the federal courts, the Court should dismiss the action because it lacks jurisdiction over the subject matter. *Perez–Perez v. Hanberry*, 781 F.2d 1477, 1478 (11th Cir. 1986). An exception to this requirement of exhaustion may be allowed if the petitioner can meet the standards for obtaining an injunction. *Zardui–Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir.1985). The petitioner must show (1) a substantial likelihood that he will prevail on the merits; (2) that he will be irreparably injured if

the injunction is not granted; (3) that the threatened injury to him outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not adversely affect the public interest. *Id.* Granting an injunction in such circumstances is "an extraordinary and drastic remedy" and should not be granted unless the petitioner " 'clearly carries the burden of persuasion' as to the four prerequisites." *Id.*

■ In this case, Petitioner failed to exhaust his administrative remedies before seeking redress from this Court. It is undisputed that Petitioner filed a Motion for Bond with the Immigration Judge. He has not obtained a ruling on the motion. There is no evidence in the record that Petitioner has pursued any form of custody review, which could have included an emergency bond hearing conducted by the Immigration Judge. If the Immigration Judge rules against him on the Motion for Bond, Petitioner may appeal to the Board of Immigration Appeals. *See In re Joseph,* No. A90562326 (BIA May 28, 1999) (providing review of immigration judge's custody determination). Instead of pursuing his remedies before the agency, Petitioner filed this habeas action when he was not immediately released as soon the Immigration Judge entered his order granting Petitioner's Motion to Terminate. Petitioner simply is not entitled to bypass the administrative process in hopes that he will find a more sympathetic forum in this Court. In addition, there is no record on which the Court may base a determination of whether Petitioner is a danger to the community or a flight risk.

■ In addition, this Court notes that Petitioner is not seeking a writ of habeas corpus following a final order in the removal proceedings. While this Court concluded above that *Richardson II* precludes this Court from exercising subject matter jurisdiction over habeas petitions even after INS has obtained a final order for removal, it is patently clear that this Court cannot issue a writ of habeas corpus while the removal proceedings remain pending.

*Richardson II,* 180 F.3d at 1316 & n. 6. In this case, the removal proceedings remain pending because the administrative process has not been exhausted. The government has announced its intention to appeal the Immigration Judge's order to the BIA and has 30 days in which to do so. *See* 8 C.F.R. § 3.38(b) (providing for appeals to BIA within 30 days of immigration judge's order). Only after the BIA rules on the appeal will Petitioner's administrative remedies be exhausted.

Furthermore, Petitioner has not adequately shown why this Court should except his case from the exhaustion of administrative remedies requirement. This case on appeal is not "open and shut." For one thing, it appears that the parties on appeal will be arguing somewhat novel issues of what constitutes an aggravated felony and what effect requiring Petitioner to register with the State of Georgia's sex offender list has on that determination. While the Immigration Judge's order to terminate the removal proceedings is persuasively written, the Immigration Judge admitted that the BIA previously has adopted "a very broad approach to the definition" of "sexual abuse of a minor" and noted that if Georgia appellate courts sustained the Superior Court's requirement that Petitioner register on the sex offender list, he might revisit the ruling. *In re Sequeira–Balmaceda,* No. A28317376, at 6, 7 n. 5 (December 23, 1999).

Finally, this Court notes that its decision in this case comports with *Richardson II.* The petitioner in *Richardson II,* like Petitioner in this case, did not exhaust his administrative remedies before seeking judicial review of his detention while removal proceedings remained pending before the Board of Immigration Appeals ("BIA"). *Richardson II,* 180 F.3d at 1316 n. 6. The Eleventh Circuit noted this fact in denying judicial review of the habeas petition: "This Court in *Mayers* further stressed that the aliens facing deportation in *Mayers* were subject to a final deportation order, whereas Richardson is challenging his detention while his removal proceed-

ings remain pending." *Id.* Unlike the petitioners in *Mayers,* Petitioner in this case and the petitioner in *Richardson II* both failed to exhaust their administrative remedies before petitioning the district courts for relief. Because Petitioner has failed to exhaust his administrative remedies, his petition for writ of habeas corpus, like the similar petition in *Richardson II,* must be denied.

### III. CONCLUSION

. Petitioner has not established that this Court possesses subject matter jurisdiction over the petition before the Court, that he has exhausted his administrative remedies, or that exhaustion of administrative remedies is not required in this case for equitable reasons. Petitioner's petition for a writ of habeas corpus, therefore, must be DENIED.