John F. WOODHAM, Plaintiff,

v.

FEDERAL TRANSIT ADMINISTRATION, Nuria I. Fernandez, as Acting Administrator of the Federal Transit Administration, Jerry Franklin, Regional Administrator (Region 4) of the Federal Transit Administration, Metropolitan Atlanta Rapid Transit Authority, and their Successors in Office, Defendants.

No. Civ.A. 1:00CV1856JTC.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 22, 2000.

John F. Woodham, Atlanta, Georgia, plaintiff pro se.

Julia B. Anderson, Office of the United States Attorney, Northern District of Georgia, Atlanta, Georgia, for defendant Federal Transit Administration, et al.

John Roger Lowery, Charles N. Pursley, Jr., Pursley, Howell, Lowery & Meeks, Atlanta, Georgia, for defendant Metropolitan Atlanta Rapid Transit Authority.

## ORDER

CAMP, District Judge.

This case is before the Court on Plaintiff's Motion for Preliminary Injunction [# 4–1], Defendants' Motion to Dismiss [# 10–1], Defendants' Motion for Summary Judgment [# 10–2], and Plaintiff's Motion for Summary Judgment [# 22–1].

## I. BACKGROUND

Defendant Federal Transit Administration ("FTA") is a federal agency that provides funding to state and local public agencies to assist in the construction and operation of mass transit systems. The principal recipient of FTA funding in the metropolitan Atlanta area is Defendant Metropolitan Atlanta Rapid Transit Authority ("MARTA"), a public body corporate that provides bus and rail services to Atlanta residents.

In 1984, the FTA provided approximately $3,870,756 to MARTA to purchase property in connection with the development of the Lindbergh MARTA station. Thirteen years later, the FTA awarded another federal grant to MARTA worth approximately $1,600,000. MARTA used $1,000,000 to purchase additional property surrounding the Lindbergh station and $600,000 to develop, prepare, and solicit proposals for a Transit Oriented Joint Development Plan.

Joint development plans allow public agencies, such as MARTA, to secure a revenue stream for mass transit systems by entering into leasing agreements with commercial and residential developers. On June 4, 1999, MARTA submitted a joint development plan to the FTA which authorized the development of office buildings, retail shops, rental apartments, and residential condominiums at the Lindbergh MARTA station. Under the joint development plan, MARTA would lease approximately 9.6 acres of federally funded real estate to third party developers and retain the lease proceeds as program income. This income would be used to defray program costs and expenses. After reviewing MARTA's proposal, the FTA concurred with the joint development plan, concluding that it satisfied the FTA's joint development guidelines.

On August 31, 2000, Plaintiff John F. Woodham filed this Complaint against the FTA and MARTA seeking injunctive and other relief. Plaintiff alleges violations of (1) the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332; (2) the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470f; and (3) regulations governing the disposition of property acquired with federal funds, 49 C.F.R. § 18.31.[1] Defendants have moved to dismiss Plaintiff's Complaint in its entirety under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Both Plaintiff and Defendant have also moved for summary judgment.

## II. MOTION TO DISMISS

### A. Legal Standard

■ The purpose of a Rule 12(b)(6) motion is to determine whether a plaintiff's complaint adequately states a claim for relief. A motion to dismiss concerns only the complaint's legal sufficiency and is not a procedure for resolving factual questions or for addressing the merits of the case. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (2d ed.1990). Consequently, the Court's inquiry is limited to the contents of the complaint. *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir.1993).

■ A motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted. Wright & Miller, § 1357 at 321. The Supreme Court has determined that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts" which would entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the complaint's allegations must be accepted as true and construed in

---

1. Plaintiff also asserted violations of the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, and the Department of Transportation Act, 49 U.S.C. § 303, in his Amended Complaint [# 4–1]. Based on Plaintiff's post-hearing briefs, his

motion for summary judgment, and his presentation to the Court on October 11, 2000, the Court concludes that Plaintiff has abandoned these claims.

the light most favorable to the plaintiff. *See Powell v. United States,* 945 F.2d 374, 375 (11th Cir.1991).

## B. Violations of the National Environmental Policy Act

The National Environmental Policy Act ("NEPA") requires federal agencies involved in "major federal actions" significantly affecting the quality of the human environment to submit a detailed statement regarding the environmental impact of the action. 42 U.S.C. § 4332(2)(C). "The fundamental purpose of NEPA is to compel federal decision makers to consider the environmental consequences of their actions." *Atlanta Coalition on Transportation Crisis v. Atlanta Regional Commission,* 599 F.2d 1333, 1344 (5th Cir.1979) ("*ARC*"). However, federal agencies are not bound by the requirements of NEPA unless "the federal government's involvement ... is sufficient to constitute 'major federal action.'" *United States v. Southern Florida Water Management District,* 28 F.3d 1563, 1572 (11th Cir.1994) (quoting *Save Barton Creek Ass'n v. Fed. Highway Admin.,* 950 F.2d 1129, 1133 (5th Cir. 1992)).

■ The presence of federal funds does not necessarily transform a local project into a "major federal action." Instead, "the distinguishing feature of federal involvement is the ability to influence or control the outcome in material respects." *South Bronx Coalition for Clean Air v. Conroy,* 20 F.Supp.2d 565 (S.D.N.Y.1998) (quoting *Landmark West! v. United States Postal Service,* 840 F.Supp. 994, 1005 (S.D.N.Y.1993)); *see also Southern Florida Water Management,* 28 F.3d at 1572 ("The focus in this case is on the federal agencies' control and responsibility over material aspects of the project."). Unless a federal agency has sufficient "power" or "control" over a project, it is not considered a "major federal action." *See id.*

In *South Bronx,* the Metropolitan Transit Authority ("MTA") sold a federally funded bus depot and used the proceeds to purchase a new facility. Plaintiff sought to enjoin the sale of the bus depot, asserting NEPA violations. The court dismissed the complaint, concluding that the FTA's role was limited to (1) providing funds for the purchase and construction of the depot and (2) concurring in MTA's proposal to apply proceeds of the sale toward a new facility. Because the FTA had no control over the MTA's project decisions, "major federal action" did not exist and the NEPA statutes did not apply.

■ In this case, the joint development plan proposed by MARTA is not a "major federal action" because the FTA had no control or responsibility over material aspects of the project. MARTA created, developed, and implemented the joint development plan, using funds received from private investors. While MARTA used FTA funding to purchase property (9.6 of the 48 total acres) and begin preliminary development of the project, these funds do not transform the joint development plan into a "major federal action." *See South Bronx,* 20 F.Supp.2d at 570; *ARC,* 599 F.2d at 1346 ("federal financial assistance to the planning process in no way implies a commitment by any federal agency to fund any transportation project ... or approve any action that directly affects the environment.").

Similarly, the FTA's "concurrence" with the proposed plan does not transform the project into a "major federal action." *See South Bronx,* 20 F.Supp.2d at 571. In fact, the FTA only reviewed the project to determine whether it satisfied federal regulations governing the lease of federal property. Because the FTA retained no discretion over "material aspects of the project," environmental review was not necessary and Plaintiff can prove no set of facts that would entitle him to relief. *See South Bronx,* 20 F.Supp.2d at 571; *ARC,* 599 F.2d at 1347. Therefore, Defendant's Motion to Dismiss is **GRANTED** and Plaintiff's NEPA claim is dismissed with prejudice.

## C. Violations of the National Historic Preservation Act

■ The National Historic Preservation Act requires the head of any federal agency having jurisdiction over a "federal or federally assisted undertaking" to "take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register." 16 U.S.C. § 470f. The purpose of the act is to require federal agencies and departments to consider the effects a project may have on a historic area prior to the approval of any funds. *Maxwell Street Historic Preservation Coalition v. Bd. of Trustees of the University of Illinois*, No. 00–C–4779, 2000 WL 1141439, *2 (N.D.Ill. August 11, 2000).

■ The NHPA only applies to (1) Federal agencies having jurisdiction over a proposed "Federal or federally assisted undertaking"; and (2) Federal agencies having authority to license any undertaking. 16 U.S.C. § 470f; *see also Sheridan Kalorama Historical Assoc. v. Christopher*, 49 F.3d 750, 755 (D.C.Cir.1995). However, federal financial assistance alone is insufficient to trigger the requirements of the NHPA. Instead, "[t]here must, in addition, be some form of federal approval, supervision, control, or at least a certain level of consultation over the spending of the federal funds." *Maxwell Street*, 2000 WL 1141439 at *4.

Moreover, the scope of jurisdiction under the NHPA has been held to be coextensive with jurisdiction under the NEPA. *See Ringsred*, 828 F.2d at 1309 ("The parties treat NHPA's 'undertaking' requirement as essentially coterminous with NEPA's 'major federal actions' requirement."); *Sugarloaf*, 959 F.2d at 515 ("The standard for triggering NHPA requirements is similar to that for the triggering of NEPA requirements."); *Village*

of *Los Ranchos de Albuquerque v. R.H. Barnhart*, 906 F.2d 1477, 1484 (after evaluating the "federal actions" under the NEPA, the court concluded that these actions did not constitute a "federal undertaking" under the NHPA).

■ In this case, the joint development plan proposed by MARTA is not a "federal undertaking." While the FTA provided MARTA with federal grants to purchase property around the Lindbergh station, the project was funded by private investors and MARTA. Even if a portion of these federal funds were used to develop the project, the NHPA has not been violated because the FTA had no supervision or control over the spending of these funds. *Maxwell Street*, 2000 WL 1141439 at *4.

Furthermore, the FTA's concurrence with the joint development plan does not constitute a "federal undertaking." Review of this proposal was extremely limited, and the FTA's concurrence was "merely a ministerial act in which the agency exercised no discretion." *Sugarloaf*, 959 F.2d at 513. As long as the proposal satisfied the statutory and regulatory requirements, the FTA had no choice but to concur in the plan. *See id.; Ringsred v. City of Duluth*, 828 F.2d 1305, 1308 (8th Cir.1987) ("[W]hile the Secretary's actions relating to the . . . project (i.e., the approval of contracts) did give him a factual veto power, these actions were not significant enough to establish a major federal action."). For these reasons, Defendant's Motion to Dismiss is GRANTED and Plaintiff's NHPA claim is dismissed with prejudice.

## D. Violations of the Federal Transit Act and Implementing Regulations

■ Plaintiff also claims that MARTA violated the Federal Transit Act and implementing regulations by leasing federally funded property to third party investors.[2]

---

**2.** This claim was first raised at the Preliminary Injunction hearing held on October 11, 2000. While Plaintiff has not amended his

Complaint to assert this claim, the Court nonetheless examines it based upon the writ-

According to Plaintiff, MARTA failed to use the property for its "originally authorized purpose" and encumbered the property with long-term leases.

The Federal Transit Act was enacted "to encourage and promote the development of transportation systems...." 49 U.S.C. § 5301(a). One of the stated purposes of the law is "to assist States and local governments and their authorities in financing areawide urban mass transportation systems that are operated by public or private mass transit companies as decided by local needs." 49 U.S.C. § 5301(f)(3). *See also* 49 U.S.C. § 5302(a)(1)(G) (authorizing the FTA to provide funding for "a mass transportation improvement that enhances economic development or incorporates private investment, including commercial and residential development ... and provides a fair share of revenue for mass transportation that will be used for mass transportation.").

The Department of Transportation promulgated regulations designed to establish "uniform administrative rules for federal grants ... to state, local and Indian tribal governments." 49 C.F.R. § 18.31 *et seq.* These regulations address both the use and the disposition of real property acquired under federal grants. Pursuant to these regulations, grantees are encouraged to rent real property acquired with federal grant funds in order to earn income and defray program costs. 49 C.F.R. § 18.25(a). However, real property obtained with federal funds must be used for its originally authorized purpose and the grantee or subgrantee may not dispose of or encumber its title. 49 C.F.R. § 18.31(b). If the grantee violates these regulations and disposes of real property obtained with federal funds, he must compensate the awarding agency. 49 C.F.R. § 18.31(c).

In this case, MARTA created a joint development plan in which it leases federal property to third party investors and retains lease proceeds as program income.

This activity is authorized under federal statutes and regulations. *See* 49 U.S.C. § 5302(a)(1)(G) (authorizing the FTA to provide funding for a mass transportation improvement that incorporates private investment); 49 C.F.R. § 18.25 (noting that grantees are "encouraged" to lease federal property to defray program costs).

Furthermore, MARTA continues to use the property for its "originally authorized purpose" and has not disposed of the property. 49 C.F.R. § 18.31(b). MARTA's joint development plan enhances economic development, encourages transit use, and provides additional funding to the mass transit system. While third party investors are permitted to rent property at the Lindbergh station, this property continues to be used for its originally authorized "transit" purpose. Because MARTA's joint development plan is authorized and "encouraged" under federal statutes and regulations, Plaintiff has failed to assert a violation of these regulations. Therefore, Defendant's Motion to Dismiss is **GRANTED** and Plaintiff's claim is dismissed with prejudice.

### E. Administrative Procedures Act

Because the NEPA, NHPA and the regulations governing the disposition of federal property do not create a private cause or right of action, Plaintiff brings these claims under the Administrative Procedures Act ("APA"). This Act allows a reviewing court to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2). As the Court pointed out in Part II Subsections B, C, and D of this Order, Defendants FTA and MARTA have not violated any of these federal statutes or regulations. Therefore, their actions were not arbitrary and capricious and Plaintiff cannot recover under the APA.

ten and oral arguments submitted by the parties.

### III. PRELIMINARY INJUNCTION

In order to obtain a preliminary injunction, a party must demonstrate: (1) a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction would not be adverse to the public interest. *Zardui–Quintana v. Richard,* 768 F.2d 1213, 1216 (11th Cir.1985). Because the preliminary injunction is an extraordinary and drastic remedy, the movant must carry its burden of persuasion as to all four prerequisites. *Id.*

In this case, Plaintiff has not carried its burden with regard to these prerequisites. As stated in Part II of this Order, Plaintiff has failed to establish a claim upon which relief can be granted. Therefore, Plaintiff has not established a likelihood of success on the merits and his Motion for Preliminary Injunction is **DENIED.**

### IV. CONCLUSION

Based upon the foregoing, Plaintiff's Motion for Preliminary Injunction [# 4–1] is **DENIED,** Defendants' Motion to Dismiss [# 10–1] is **GRANTED,** and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE.** Plaintiff's Motion for Summary Judgment [# 22–1] and Defendants' Motion for Summary Judgment [# 10–2] are **DENIED AS MOOT.**