**PUBLIC SERVICE TELEPHONE COMPANY, Plaintiff,**

v.

**The GEORGIA PUBLIC SERVICE COMMISSION; et al., Defendants.**

**Public Service Telephone Company, Plaintiff,**

v.

**The Georgia Public Service Commission; et al., Defendants.**

Civil Action File Nos. 1:08–CV–1437–CC, 1:08–CV–1438–CC.

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 4, 2010.

Benjamin H. Dickens, Blooston, Mordkofsky, Dickens, Duffy & Prendergast, Larry Craig Dowdy, McKenna Long & Aldridge, for Plaintiffs.

Daniel S. Walsh, Office of State Attorney General, for The Georgia Public Service Commission and individual Commissioners.

Stephen B. Rowell, Alltel Communications, LLC and Michael Singleton Reeves, Friend Hudak & Harris, LLP, for Alltel Communications, LLC.

Elaine D. Critides, Verizon Wireless, Charles Frederick Palmer, Kevin Gregory Meeks, Troutman Sanders, LLP, for Verizon Wireless of the East LP.

## ORDER

CLARENCE COOPER, District Judge.

These are related telecommunications cases in which Plaintiff Public Service Telephone Company ("PSTC" or "Plaintiff") challenges orders issued by the Georgia Public Service Commission (the "Commission") against PSTC in favor of Alltel Communications, LLC ("Alltel") (Civil Action No. 1: 08–CV–1437–CC) and Verizon Wireless of the East LP ("Verizon Wireless" and, together with the Commission and Alltel, the "Defendants") (Civil Action No. 1:08–CV–1438–CC). Before the Court is PSTC's request for injunctive relief pursuant to the Verified Complaints filed in both cases. For the reasons stated below, the Court rules in favor of Defendants in both cases.

## I. BACKGROUND

Although PSTC's disputes with Alltel and Verizon Wireless are not identical, they do arise from similar facts and generally depend on the same provisions of law. In addition, the interconnection and recip-

rocal compensation agreements (the "interconnection agreements" or "ICAs") that PSTC has entered into with Alltel and Verizon Wireless are the same.

PSTC is a local exchange carrier ("LEC"), as defined by 47 U.S.C. § 153(26), and an incumbent local exchange carrier ("ILEC"), as defined by 47 U.S.C. § 251(h). PSTC provides wireline telephone services to customers in seven exchanges (sometimes called "rate centers") in certain counties of Georgia, including all or portions of Talbot, Taylor, Muscogee, Crawford, Macon, Marion, Monroe, Upson, and Bibb counties (its local exchange service area). All of PSTC's end offices are inside an Extended Area Service ("EAS") area and, therefore, PSTC customers inside the PSTC network can call each other with local calls (i.e., without long distance or toll (1+) dialing and without incurring long distance or toll charges). PSTC and its customers have also delineated, with Commission approval, certain geographic areas outside PSTC's local exchange service area that can be dialed and completed as local calls. For example, PSTC customers in its Lizella and Roberta exchanges can call Macon, Georgia exchanges (served by a different ILEC, i.e., AT & T, formerly known as BellSouth Telecommunications) without incurring long distance charges. PSTC customers in Talbotton and Geneva can call Columbus, Georgia exchanges (also served by AT & T) without long distance charges. Therefore, depending on where PSTC customers' calls originate and terminate, the calls to other wireline carriers can be either local or toll.

Alltel and Verizon Wireless are licensed by the FCC as commercial mobile radio service ("CMRS") carriers to provide wireless telephone service throughout most of Georgia, including in PSTC's local exchange service territory. The parties agree that PSTC's local exchange service area and the Macon and Columbus exchanges are within the same "Major Trading Area" (or "MTA"), as established by 47 C.F.R. § 24.202. 47 C.F.R. § 51.701 establishes that traffic exchanged between local exchange carriers (including incumbent local exchange carriers) and CMRS providers that originates and terminates within the same MTA is subject to the FCC's rules governing reciprocal compensation. *See Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, 11 F.C.C.R. 15,499, at ¶ 1036, 1996 WL 452885 (August 8, 1996) ("traffic to or from a [wireless provider's] network that originates and terminates within the same MTA is subject to transport and termination rates under [47 U.S.C. § ·] 251(b)(5), rather than interstate and intrastate access charges").

### A. The PSTC–Alltel Dispute

Prior to February 2005, PSTC, through its wireless affiliate, Public Service Cellular, provided wireless communication services. As part of its operations, Public Service Cellular established the 478–672 "NPA–NXX" code (i.e., the number block, containing the area code and the central office code, from which telephone numbers were assigned to the wireless subscribers) and "rated" this number block, for purposes of determining the jurisdiction of and compensation for calls to and from numbers assigned from the code, as local to PSTC's Roberta, Georgia rate center. Accordingly, at all times during PSTC's wireless operations, calls to the numbers assigned from the 478–672 code (the "478–672 numbers") were dialed as local calls by any wireline customer in any PSTC exchange, regardless of the location of the wireless customer.

In February 2005, Alltel acquired PSTC's wireless operations, including the

wireless subscribers assigned the 478–672 numbers. Following the acquisition, PSTC continued to treat calls from its subscribers to Alltel's 478–672 numbers as local calls, and no change was made to the rating of the 478–672 numbers as local to PSTC's local exchange service area. In addition, the parties continued to maintain a direct point of interconnection ("POI") on PSTC's network facilities in Roberta for the exchange of local traffic between the parties. Calls originating with third party carriers also transited, or routed through, PSTC's Roberta switch and were delivered to Alltel at the Roberta POI. Although not terminating such traffic, PSTC apparently billed access charges to the third-party carriers originating the calls. On its side of the POI in Roberta, Alltel established network facilities and handled the transport to Alltel's wireless switch located in Columbus, Georgia. PSTC incurred no costs associated with the network and transport on Alltel's side of the POI.

In 2006 Alltel "re-homed" (i.e., re-routed) calls to its customers from third-party carriers. Alltel did so by routing such calls to its facilities through the Macon tandem of AT & T, as a consequence of which calls not intended for PSTC's customers would no longer transit PSTC's facilities. According to the Commission order below, Alltel provided PSTC and other carriers with notice of the rerouting consistent with industry guidelines, and the re-home was approved by the North American Numbering Plan Administrator ("NANPA"). The 478–672 numbers remained rated to Roberta. The re-home did not affect the technical ability of PSTC to continue to route calls originated from its customers to Alltel via the Roberta POI Nor did the re-home cause PSTC to incur any additional costs.

Approximately two weeks prior to the stated effective date of the re-home, PSTC provided Alltel notice of its intent to "re-rate" to Macon all calls to the 478–672 numbers. Thus, calls to the 478–672 numbers from PSTC's customers that did not have local calling to Macon would be toll calls. PSTC contended that such calls must be treated the same as calls from a PSTC wireline customer to an AT & T wireline customer in Macon. Alltel objected to the rerating, and provided PSTC with a bona fide request for interconnection agreement negotiations pursuant to 47 U.S.C. §§ 251 and 252. Both before and during negotiations, Alltel requested that the rating of traffic at and routing of traffic through Roberta not change for traffic between PSTC and Alltel.

On September 11, 2006, Alltel filed a complaint with the Commission to prevent PSTC from re-rating the traffic and revoking the local dialing parity required by 47 U.S.C. § 251(b)(3) and 47 C.F.R. § 51.207. PSTC submitted an answer and counterclaim, the latter alleging, in principal part, that Alltel had failed to reciprocally terminate traffic for which PSTC was entitled to reciprocal compensation. On September 28, 2006, the Commission issued a standstill order that directed PSTC not to make dialing, rating, or routing changes pending the resolution of the proceeding.

According to the Commission order below, PSTC insisted that the POI be located in Macon, to which PSTC had extended its network. In November 2006, the parties entered into an interconnection and reciprocal compensation agreement (the "Alltel Agreement" or "Alltel ICA"), which was made effective September 6, 2006. The Alltel Agreement, which was based on the interconnection agreement entered into between PSTC and Verizon Wireless, established the direct interconnection POI at

Macon for the exchange of the parties' traffic.

Following the negotiation of the Alltel Agreement, and throughout the proceedings before the Commission and this Court, PSTC has asserted that because calls to the 478–672 numbers were rerouted through Macon rather than through Roberta while the numbers themselves remained rated to Roberta, a "split rating and routing" [1] process has been established that would unlawfully expand the geographic scope of local calling from PSTC's local exchange service area and cause PSTC to lose reciprocal compensation payments. According to PSTC, the split rating and routing violates the Telecommunications Act of 1996 (the "Act"), Pub. L. No. 104–106, 110 Stat. 56 (1996) (codified in scattered sections of title 47 of the United States Code) and the Alltel ICA. The core of PSTC's argument is essentially that the Alltel ICA—principally, Section IV(B)(3)—and 47 U.S.C. § 252(a)(1) contract around the dialing parity and other requirements of 47 U.S.C. § 251(b), and that the Commission in essence has created a dialing disparity between wireline and wireless customers. PSTC also contends that the split rating and routing violates 47 C.F.R. § 20.11, which allows local exchange carriers to avoid interconnection that is economically unreasonable. Further, PSTC asserts that the arrangement is tantamount to "virtual NXX," in which local calls are impermissibly made to remote calling locations.

On October 2, 2006, the Commission referred the matter to a Hearing Officer. Thereafter, discovery was conducted and the Hearing Officer received pre-filed testimony from the parties, leading to an evidentiary hearing on April 19, 2007. Following the hearing the parties submitted briefs. In PSTC's post-hearing brief it asserted, for the first time in the proceeding, the claim that the alternative dispute resolution ("ADR") provision set forth in the Alltel ICA deprived the Commission of jurisdiction to decide the matter. On December 6, 2007, the Hearing Officer issued an Initial Decision, finding for Alltel and dismissing PSTC's counterclaim.

On January 4, 2008, PSTC filed an Application for Review of the Initial Decision, seeking full Commission review. Following the submission of comments by the parties, the Commission Staff addressed the arguments raised by PSTC and recommended that the Commission adopt the Hearing Officer's Initial Decision. The parties presented oral comments to the Commission at the February 16, 2008 Telecommunications Committee, which is an open meeting. On February 21, 2008, during an Administrative Session (an open meeting), the Commission voted to adopt the Hearing Officer's Initial Decision. On April 4, 2008, the Commission entered a written order in favor of Alltel (the "Alltel Order").

The Alltel Order found that PSTC had waived any jurisdictional argument related to ADR because it had acted inconsistently with the asserted right by litigating the dispute through hearing before raising the

---

1. PSTC has referred to the assignment of two different geographical locations for rating and routing purposes in the Local Exchange Routing Guide ("LERG") as "split rating and routing." Defendants contend that split rating and routing is common practice and consistent with industry guidelines for wireless carriers establishing numbers associated with

rural LEC rate centers, especially when the rural LEC does not have its own tandem, as is the case with PSTC. PSTC contends that split rating and routing is a non-standard configuration in the industry. Alltel maintains that in its case split rating and routing was established at the insistence of PSTC.

claim, thereby prejudicing Alltel. In addition, the Commission found that the dispute did not arise under the parties' ICA. The Commission also rejected PSTC's arguments premised on the Act and the Alltel Agreement, finding that Section IV(B)(3) of the Alltel Agreement does not provide that calls to the 478–672 numbers should be rated as toll calls, and that PSTC's attempt to re-rate calls that were locally rated prior to the effective date of the Alltel Agreement violated the dialing parity requirements of Section 251(b)(3) of the Act and the FCC rules (including 47 CFR §§ 51.205 and 51.207). The Commission found that the evidence reflected that the 478–672 numbers are assigned to subscribers within the MTA that encompasses PSTC's local exchange service area. Alltel's customers live and work in PSTC's local exchange service area, and, indeed, most of the subscribers with the 478–672 numbers are Roberta residents who were assigned those numbers by PSTC's wireless affiliate. In addition, the Commission rejected the 47 C.F.R. § 20.11 argument, noting that PSTC admitted that the re-home did not require PSTC to do anything to its network or to incur any additional costs. Moreover, the Commission found that PSTC was not entitled to require transiting through its network of calls originating from third-party carriers, and PSTC was not entitled to receive reciprocal compensation or access revenues from third-party carriers originating calls destined to Alltel. PSTC's own evidence demonstrated that there was no significant change in the volume of Alltel-originated traffic to PSTC for which PSTC was entitled to receive reciprocal compensation. Finally, the Commission rejected PSTC's virtual NXX argument, distinguishing the facts in the case from those considered by the Commission in its previous determinations on the subject.

On April 9, 2009 PSTC filed a Motion for Reconsideration claiming that the Commission modified the Hearing Officer's Initial Decision without conducting a formal review of the Initial Decision pursuant to O.C.G.A. § 50–13–17(a). PSTC also claimed that the Alltel Order did not reflect the Commission's decision in the February 21, 2008 open meeting, and, therefore, was in violation of the Georgia Open Meetings Act, O.C.G.A. § 50–14–1(b). On April 10, 2008, the Commission's Telecommunications Committee heard oral argument from the parties on PSTC's Motion for Reconsideration. On April 15, 2008, the Commission denied PSTC's Motion for Reconsideration, ratified the Alltel Order, and further ordered that PSTC continue to rate and route the 478–672 numbers as local calls. PSTC then filed its Verified Complaint for Injunctive Relief and associated motions in this Court. On April 18, 2008, the Commission issued a written order denying the Motion for Reconsideration.

In accordance with the Commission's decisions, PSTC is currently rating its subscribers' calls to the 478–672 numbers as local. Alltel is accepting PSTC's traffic in Macon at the direct POI on PSTC's network and is transporting the calls to its distant wireless switch and then to the cell tower that is serving its wireless subscriber. As when PSTC was the wireless service provider, a wireless subscriber, although assigned a 478–672 number because of his or her residence or work in PSTC's local exchange service area, may be located within PSTC's local exchange service area or elsewhere when placing or receiving a call from his or her mobile phone. PSTC continues to contend that Alltel established "split rating and routing," that such an arrangement violates the Alltel ICA regarding local and toll calling patterns, and that any comparisons to the local dialing and other treatment of

the 478–672 numbers prior to Alltel's split rating and routing are misplaced. Both the Commission and Alltel contend that the change in routing does not relieve PSTC of the obligations imposed by the Act and the FCC rules, which in any event are not changed by the Alltel Agreement. The Commission and Alltel also contend that PSTC is not being denied any reciprocal compensation from Alltel in accordance with the terms of the Alltel Agreement, and that PSTC is not incurring any charges for transiting its traffic to Alltel through another carrier because PSTC is delivering its traffic directly to Alltel. Alltel contends that the change in POI from one point on PSTC's network, Roberta, to another point on PSTC's network, Macon, was at the request of PSTC. In addition, the Commission and Alltel claim that PSTC does not have any contractual, statutory, regulatory or other legal right to require that third party originated traffic be routed through PSTC's network before reaching Alltel's subscribers.

### B. The PSTC–Verizon Wireless Dispute

In November 2005, Verizon Wireless and PSTC voluntarily entered into an interconnection agreement (the "Verizon Agreement" or the "Verizon ICA" and, together with the Alltel ICA, the "ICAs"), which was made retroactively effective from January 1, 2005, and which was approved by the Commission. The Verizon ICA is the same as the Alltel ICA, which was entered into approximately ten months later, and contains provisions that PSTC contends are related to, among other things, local and toll calling, network interconnection, and ADR.

With respect to network connection, the ICA provides for direct connection between the Verizon Wireless and PSTC networks in Macon, Georgia. This Macon POI was established at the express request of PSTC. Verizon Wireless also contends that the ICA permits indirect connection such that the parties could exchange traffic indirectly via AT & T's Macon Tandem. PSTC disputes this contention and claims that the parties elected only to have direct connection.

In order to provide its customers with telephone numbers that would allow calls originating from PSTC landlines to be considered local calls throughout the PSTC "community of interest,"[2] Verizon Wireless applied for and obtained the 478–391 NPA–NXX code from NANPA. This code corresponds to the central office code associated with PSTC's Reynolds, Georgia rate center. Verizon Wireless notified PSTC that it intended to obtain this NPA–NXX code and requested PSTC's approval to enter the code for what Verizon Wireless understood to be PSTC's Roberta tandem switch into a particular field in the LERG and to establish AT & T's Macon tandem as the homing (or routing) tandem for the new NPA–NXX code in the LERG. Verizon Wireless subsequently learned that PSTC's switch in Roberta is not a tandem switch. As a result, Verizon Wireless established its Reynolds NPA–NXX in the LERG Routing Guide without using the Roberta tandem switch.

In early January 2007, Verizon Wireless tested calls to its new Reynolds numbers and discovered that PSTC had not loaded the new NPA–NXX code into PSTC's switches. PSTC's landline customers, therefore, could not call Verizon Wireless customers with this NPA–NXX code. Un-

---

**2.** "Community of interest" is a term of art in the telecommunications field referencing a grouping of telephone users who call one another with a high degree of frequency. *See* Harry Newton, *Newton's Telecom Dictionary* 418 (20th ed. 2004).

der the Commission's supervision, the parties engaged in discussions,. but PSTC would not agree to load the NPA–NXX code. PSTC claims that by loading this code, PSTC would accept Verizon Wireless's proposed configuration, which includes split rating and routing, and would facilitate dialing which PSTC alleges violates the Verizon ICA. Therefore, PSTC did not agree to load the code. As with the Alltel dispute, PSTC contends that Verizon Wireless's request to load the code would improperly expand the geographic reach by which Verizon Wireless's customers could be contacted by PSTC's customers without being charged toll charges. PSTC further contends, as in the Alltel dispute, that if PSTC loads the code, PSTC will lose access charges and reciprocal compensation payments and would have to pay transit fees to AT & T for indirect connection. Verizon Wireless disagrees with PSTC that the proposed configuration violates any provision of the Verizon ICA. Verizon Wireless contends that PSTC's loading of the code would not force PSTC to route its customers' calls to Verizon Wireless indirectly as such calls could be routed over the existing direct interconnection, and transit fees would not be applied by AT & T. However, even if routing of such calls via AT & T's Macon Tandem were necessary, Verizon Wireless states that such routing is provided for through the Verizon ICA's indirect interconnection provisions. PSTC disagrees with Verizon Wireless's contentions.

Verizon Wireless further alleges that without this code being loaded in PSTC's switches, PSTC's landline customers cannot place calls to Verizon Wireless's customers who have been assigned numbers from the 478–391 NPA–NXX code regardless of whether the number is dialed as a local or long distance call. Verizon Wireless maintains that PSTC's refusal to load the code is harmful to consumers,

who should be permitted to obtain from Verizon Wireless telephone numbers that permit them to receive calls from PSTC landline customers as local calls, without incurring access or toll charges. Verizon Wireless claims that customers of PSTC and Verizon Wireless would be harmed because certain calls from PSTC's network would not complete to mobile subscribers of Verizon Wireless.

In response to PSTC's decision not to load the code, on February 28, 2007, Verizon Wireless filed a Request for Emergency Relief with the Commission. On March 22, 2007, the Commission conducted a hearing to determine if an emergency existed "affecting public health, safety, and welfare." In its April 9, 2007 Administrative Session, the Commission found no such emergency existed. Subsequently, on April 19, 2007, a Commission Hearing Officer conducted an evidentiary hearing which was held immediately following the Alltel hearing. On December 6, 2007, the Commission Hearing Officer issued an Initial Decision finding for Verizon Wireless.

On January 4, 2008, PSTC filed an Application for Review of Initial Decision Seeking Commission Review of Hearing Officer's Initial Decision. On January 16, 2008, Verizon Wireless submitted its Response to PSTC's Application for Review. Subsequently, Commission Staff prepared a recommendation addressing the arguments in PSTC's Application for Review and recommending that the Commission adopt the Commission Hearing Officer's Initial Decision. The Commission's Telecommunications Committee, on which all five Commissioners participate, heard oral argument from the parties' counsel at the Committee's meeting on February 16, 2008. On February 21, 2008, during an Administrative Session (an open meeting), the Commission voted to adopt the Initial Decision of the Hearing Officer.

The Commission ultimately entered a written order in favor of Verizon Wireless on April 4, 2008, ordering PSTC to load Verizon Wireless's 478–391 NPA–NXX code within ten business days, to refrain from impeding or interrupting the rating or routing of calls for that code, and to provide local dialing parity for those calls. In reaching its decision, the Commission concluded that PSTC did not have any right to ADR because the dispute did not arise under the parties' interconnection agreement. The Commission found that, even if the ADR provision had applied, PSTC's conduct resulted in waiver of that provision. As in the Alltel case, the Commission determined that PSTC's position was inconsistent with both federal law and the parties' interconnection agreement. Specifically, the Commission determined that the dialing parity requirements under the Act required that the calls in question be rated as local. The Commission construed the parties' interconnection agreement to reach this same result. Moreover, the Commission concluded that nothing in the interconnection agreement precluded the parties from exchanging traffic via indirect interconnection. The Commission made a number of findings based on the evidence before it in the proceeding. The Commission determined that the evidence in the case reflected that the split rating and routing arrangement did not constitute an impermissible virtual NXX arrangement, that Verizon Wireless assigned numbers to its customers based on where the customers' community of interest, and that the rating and routing arrangement is not economically unreasonable.

PSTC filed a Motion for Reconsideration with the Commission in which it claimed that the Commission improperly modified the Hearing Officer's Initial Decision without conducting a formal review of the Initial Decision in violation of O.C.G.A. § 50–13–17(a) and issued an order that did not reflect its decision in the February 21, 2008 open meeting in violation of the Georgia Open Meetings Act, O.C.G.A. § 50–14–1(b). On April 10, 2008, the Commission's Telecommunications Committee heard oral argument from the parties on PSTC's Motion for Reconsideration. In its April 15, 2008 Administrative Session (an open meeting), the Commission denied PSTC's Motion for Reconsideration, ratified its prior order, and further ordered that PSTC remained obligated to load Verizon Wireless's NPA–NXX code by April 18, 2008. On April 18, 2008, the Commission issued its written order denying the Motion for Reconsideration.

### C. Proceedings Before This Court

On April 16, 2008, PSTC filed a Complaint for Injunctive Relief and a Motion for Temporary Restraining Order and Preliminary Injunction in both the Alltel and Verizon Wireless cases. This Court heard oral argument on the Motions for Temporary Restraining Order and Preliminary Injunction on April 21, 2008, and denied the Motions by written order on May 6, 2008. The parties then submitted briefs on the merits pursuant to a scheduling order the Court entered. The Court heard oral argument on the merits on December 18, 2009.

## II. STANDARD OF REVIEW

■ The Eleventh Circuit has set forth a two-tiered standard for federal court review of state public service commission decisions. See *BellSouth Telecomms., Inc. v. NuVox Commc'ns, Inc.*, No. 1:04–CV–2790–WSD, 2006 WL 2617123, at *8, 2006 U.S. Dist. LEXIS 65029, at *25 (Sept. 12, 2006) (citing *MCI Worldcom Commc'ns, Inc. v. BellSouth Telecomms., Inc.*, 446 F.3d 1164, 1170 (11th Cir.2006), *vacated as moot*, No. 06–15443–BB (11th Cir. Apr. 27, 2007)). Under this two-tiered standard,

issues of federal law are reviewed *de novo*. *See MCI Worldcom*, 446 F.3d at 1170 (11th Cir.2006); *NuVox*, 2006 WL 2617123, at *8, 2006 U.S. Dist. LEXIS 65029, at *25. A public service commission's factual findings, however, are reviewed under an "arbitrary and capricious" standard, and this standard specifically applies to a state public service commission's interpretation and application of an interconnection agreement, as well as to the commission's state law determinations. *See NuVox*, 2006 WL 2617123, at *9, 2006 U.S. Dist. LEXIS 65029, at *25, *28 ("This Court will review the [Commission's] interpretation of the Agreement under the 'arbitrary and capricious' standard.") (citing *MCI Worldcom*, 446 F.3d at 1170).

■ "A finding that a decision was arbitrary or capricious requires [the court] to find no rational basis for the decision." *Tackitt v. Prudential Ins. Co.*, 758 F.2d 1572, 1575 (11th Cir.1985) (citations omitted). Once the court finds a rational connection between the evidence and the decision, the court must defer to the agency's expertise. *See id.*

■ The requirements for permanent injunctive relief are (1) success on the merits, (2) continuing irreparable injury, (3) the absence of an adequate remedy at law, and (4) that the injunction, if issued, would not be adverse to the public interest. *Zardui–Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir.1985). Failure to demonstrate all of these requirements must result in denial of the requested permanent relief.[3] This standard is "essentially the same as the standard for a preliminary injunction, except that the plaintiff must show actual success on the merits rather than a 'likelihood of success'

on the merits." *See European Connections & Tours, Inc. v. Gonzales*, 480 F.Supp.2d 1355, 1369 (N.D.Ga.2007) (citing *Klay v. United Healthgroup, Inc.* 376 F.3d 1092, 1097 (11th Cir.2004)).

## III. DISCUSSION

Plaintiff contends that the Commission's orders violate (1) the Telecommunications Act of 1996 and the ICAs, (2) 47 C.F.R. § 20.11, and (3) Georgia contract law interpretation principles.

### A. The Telecommunications Act of 1996 and the ICAs

Plaintiff cites the *NuVox* decision as support for its contention that the Commission erred as a matter of federal law by imposing on the parties the local dialing parity obligations of Sections 251(b) and (c) of the Act. Plaintiff maintains that once parties have voluntarily negotiated an ICA, the terms of the agreement govern rather than the substantive duties provided in Sections 251(b) and (c). *NuVox*, however, involved a conflict between an interconnection agreement and federal law with regard to audit rights, and the interconnection agreement at issue in that case expressly addressed the audit rights to be applied. 2006 WL 2617123, at *2–4, 2006 U.S. Dist. LEXIS 65029, at *8–11. Accordingly, the *NuVox* court reviewed the interrelationship of the interconnection agreement, federal and state law, and principles of contract interpretation. *See id.* at *2, *9–20, 2006 U.S. Dist. LEXIS 65029 at *8, *29–60.

These cases differ from *NuVox* in that nothing in the ICAs suggests that the parties agreed to alter the local dialing

---

**3.** In *Klay v. United Healthgroup, Inc.*, the Eleventh Circuit Court of Appeals noted that "most courts do not consider the public interest element in deciding whether to issue a permanent injunction, though the Third Circuit has held otherwise." 376 F.3d 1092, 1097 (11th Cir.2004) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir.2001)).

parity or code-loading requirements of federal law. Moreover, the interconnection agreements expressly require "consisten[cy of the arrangements set forth therein] with Section 251 of the . . . Act," which would include 47 U.S.C. § 251(b)(3)'s obligation of dialing parity, as well as with ILEC duties under 47 U.S.C. § 251(c). In addition, the interconnection agreements incorporate 47 U.S.C. § 251(b)(5) and 47 C.F.R. § 51.701 in defining "Major Trading Area" and in stating that calls originating and terminating within the same Major Trading Area are subject to the reciprocal compensation set forth in Appendix A of the agreements. As the Commission recognized, there is no reason to treat dialing parity under § 251(b)(3) and 47 C.F.R. § 51.207 differently from the treatment of reciprocal compensation. The traffic within an MTA that is subject to reciprocal compensation, *Alma Commc'ns Company v. Missouri Public Service Commission*, 490 F.3d 619 (8th Cir.2007), and *Atlas Telephone Company v. Oklahoma Corporation Commission*, 400 F.3d 1256 (10th Cir.2005), should also be treated as subject to local dialing. *WWC License, L.L.C. v. Boyle*, 459 F.3d 880 (8th Cir.2006).

■ Because the ICAs explicitly seek arrangements consistent with federal law in general and do not by their terms contract around the Act, the Commission did not err in holding Plaintiff to its obligations under the Act. The Commission's finding that the ICAs did not authorize Plaintiff to refuse to treat calls to Defendants' customers as local when calls to similarly rated wireline customers would be treated as local, or to refuse to load Verizon Wireless's newly assigned NPA–NXX code is rational and cannot be deemed arbitrary and capricious. The

Commission's interpretation also furthered the public interest in maintaining the competitive neutrality and ubiquitous quality of the public switched telephone network.[4] In issuing its orders, the Commission carried out its statutory authority to interpret and enforce the ICAs and provided a rational basis for the interpretation set forth in its decisions. The Commission also properly applied federal law. Therefore, consistent with the principles set forth in *NuVox* and for the reasons set forth below, this Court upholds the Commission's orders with regard to the Commission's application of the Act to the ICAs.

### 1. Local Calling Scope and Local Dialing Parity

Local dialing parity "includes the recognition of local numbers for competitors' customers and the treatment of certain calls between carriers' customers as local calls with seven-digit dialing." *WWC License, L.L.C.*, 459 at 884. The parties dispute whether calls from Plaintiff's wireline customers, which are routed through AT & T's Macon exchange before terminating with Verizon Wireless and Alltel customers with numbers also associated with the Reynolds and the Roberta exchanges, should be local or toll calls. The Commission correctly interpreted Section IV(B)(3) of the ICAs as requiring that PSTC continue to provide the local dialing parity that existed when the numbers at issue in the Alltel case were initially established as local by PSTC. Likewise, the Commission correctly concluded that nothing in the Verizon ICA suggests the 478–391 NPA–NXX code obtained by Verizon Wireless from NANPA should not be afforded similar local dialing parity.

---

4. "Public Switched Telephone Network," or "PSTN," is a term of art which simply refers to the worldwide voice telephone network accessible to all persons with telephones and access privileges. *See* Newton, *supra* note 2, at 418.

Federal law provides that calls from Plaintiff's wireline customers to customers of other carriers with telephone numbers associated with a rate center in Plaintiff's local calling area should be rated as local calls. 47 U.S.C. § 251(b)(3) establishes the duty of a LEC to provide dialing parity to competing providers of telephone exchange service and telephone toll service. 47 C.F.R. § 51.207 establishes that a LEC "shall permit telephone exchange service customers within a local calling area to dial the same number of digits to make a local telephone call notwithstanding the identity of the customer's or the called party's telecommunications service provider." For calls from PSTC subscribers to Alltel's or Verizon Wireless's subscribers, the number blocks or codes at issue in these cases are assigned to subscribers with a community of interest in PSTC's local calling area, i.e., customers who live or work in PSTC's local exchange calling area. As the Commission rationally determined, the record evidence does not support PSTC's contention that these numbers are being assigned to subscribers lacking such community of interest. Most subscribers with 478–672 numbers are residents of PSTC's local exchange service area and were assigned the numbers when PSTC's wireless affiliate operated the business.

Moreover, federal law is also clear on what constitutes a "local" call between a local exchange carrier and a commercial mobile radio service ("CMRS") provider. The FCC has established that for purposes of reciprocal compensation, calls between a LEC and a CMRS network which originate and terminate within the same MTA, such as those at issue in these cases, are local calls. See 47 C.F.R. § 51.701(b)(2). This same standard for identifying local calls applies in the context of local dialing parity. *WWC License, L.L.C.*, 459 F.3d at 892. The fact that the parties entered into

ICAs which address some issues does not negate the application of federal law to other issues that may not have been plainly addressed in the ICAs. *NuVox*, 2006 WL 2617123, at *16–17, 2006 U.S. Dist. LEXIS 65029, at *49 (stating that "the rights granted by § 252(a)(1) include the right to *incorporate or ignore* the provisions of § 251(b) and (c) as the parties choose . . . ." (emphasis added)).

Plaintiff argues that Section IV(B)(3) of the ICAs provides terms defining when calls originating from Plaintiffs customers to Verizon Wireless and Alltel customers will be treated as toll calls and when they will be treated as local calls. That section states in relevant part:

> As it relates to whether a call is treated as a toll call or is included as part of the local exchange service for calls in the ILEC's local calling area and without prejudice to the ILEC's position that it has no legal obligation to do so, the ILEC agrees to rate its end users' originated calls to CMRS Carrier end users the same way it rates its end users' calls to another wireline carrier's end users when the CMRS Carrier's end users have a telephone number associated with the same rate center as that of the other wireline carrier. Thus, if the ILEC's end user's call to another incumbent carrier's NPA–NXX rate center code is rated and dialed as a local call, then for purposes of the ILEC's end user's calls to CMRS Carrier end users with numbers associated with the same rate center, the ILEC will treat those calls as local for purpose of its end-user dialing and when billing its end users.

Plaintiff argues that this provision requires that it rate a wireline-to-mobile call from one of its end users to a Verizon Wireless or Alltel mobile phone at a particular rate center as local only if the follow-

ing two conditions are met: (1) a PSTC end user's call to another incumbent wireline carrier's NPA–NXX code would be rated and dialed as a local call, and (2) the CMRS carrier's (Verizon Wireless's or Alltel's) end user has a number associated with that same ILEC's rate center. Plaintiff maintains that the first of these two conditions is not met in these cases because the majority of Plaintiff's customers for whom Verizon Wireless and Alltel seek local calling patterns to Verizon Wireless and Alltel customers do not have local calling to other wireline customers in Macon. Plaintiff further argues that the second condition for local calling status is not met because the Verizon Wireless and Alltel customers at issue do not have phone numbers that are rated at AT & T's Macon rate center.

Defendants argue that the Commission's orders correctly stated that Section IV(B)(3) of the ICAs "establishes that [PSTC] shall not discriminate against [Defendants'] customers in terms of whether a call is rated as local or toll." The Court agrees. The Commission accurately recognized that "[t]he fact that the call from the [PSTC] end user is *routed through* Macon does not impact the analysis under [the ICA]." (Emphasis added.) The key to the ICAs in this regard is that calls to Verizon Wireless and Alltel numbers must be rated the same as calls to landline numbers associated with the same *rate center* as the Verizon Wireless and Alltel numbers. This is consistent with the FCC's rules defining local dialing parity, and nothing in the language of Section IV(B) of the ICAs relieves Plaintiff from its local dialing parity obligation under Section 251(b)(3) of the Act. The homing of Verizon Wireless's Reynolds NPA–NXX and Alltel's Roberta NPA–NXX codes to Macon does not force Plaintiff to route its calls to Defendants' customers indirectly and does not cause any expansion of the local calling areas Plaintiff provides to its own customers. The Commission properly found that Section IV(B) of the ICAs is consistent with the non-discriminatory dialing parity requirements of the Act and FCC rules and that Section IV(B)(3) of the ICAs discusses the rating of calls, not their routing. Under Section IV(B)(3), a call from a PSTC wireline customer to a wireless customer of Alltel or Verizon Wireless with the numbers associated with the 478–672 or 478–391 rate centers is a local call. There is no basis to conclude that the Commission acted arbitrarily and capriciously in interpreting the ICAs or that the Commission incorrectly applied federal law to the issue of local dialing parity.

### 2. Federal Code–Loading Requirements

The Verizon Wireless case is also distinguishable from *NuVox* in that there is no provision in the Verizon ICA that addresses code loading and that gives any indication that the parties intended to contract around federal law on the issue. In the absence of any reference to code loading in the ICAs, it was not arbitrary and capricious for the Commission to conclude that the parties did not intend to contract around the obligations of federal law. The Alliance for Telecommunications Industry Solutions Industry Numbering Committee ("ATIS INC") sets the telecommunications industry NXX code guidelines through its Central Office/NXX ("CO/NXX") Subcommittee. These guidelines were developed at the FCC's direction, and FCC rules require NANPA to act in accordance with them. *See* 47 C.F.R. § 52.13(b); *In re Numbering Resource Optimization,* 14 FCC Rcd. 10322, 10339 at ¶ 36, 1999 WL 345558, 1999 FCC LEXIS 2451 (June 1, 1999). The standards-setting process works only when each carrier follows the guidelines. An important guideline to en-

sure completion of traffic between different providers' customers is that codes must be loaded within a specific time. Provisions from the ATIS INC's Central Office Code (NXX) Assignment Guidelines (ATIS–0300051) allow carriers to select different geographic locations for the rating and routing of calls. PSTC has not cited to any FCC or Commission decision that allows a carrier to avoid providing local dialing parity, ignore the industry guidelines, and resist opening a competitive wireless carrier's numbers in its switches.

### 3. Indirect Interconnection Under the ICAs and Federal Law

Plaintiff contends that the split rating and routing of calls to Defendants' customers results in indirect connection between the parties, via the AT & T Macon exchange, which, according to Plaintiff, the ICAs do not permit. Defendants maintain that homing codes to Macon does not equate to indirect interconnection and that, even if it does, indirect interconnection is permitted under the ICAs. Section IV of the ICAs, on "Traffic Exchange and Compensation," is divided into two types of interconnection—direct and indirect—and states in the first sentence of the section that the parties may exchange traffic "directly and/or indirectly as provided in [Subsections] A and B." Subsection A is entitled "Direct Interconnection," and Subsection B is entitled "Indirect Interconnection."

Subsection A states that, for direct interconnection, "[a] greed upon direct interconnection points are identified in Appendix B" to the ICAs, and Appendix B states that the direct interconnection point shall be on PSTC's network at 392 Pansy Avenue, Macon, Georgia 31204. Nowhere in Subsection A on direct interconnection (or in Subsection B on indirect interconnection or anywhere else) do the ICAs state that

indirect interconnection is not allowed or that delineating an *indirect* interconnection point is required. The ICAs simply provide in Appendix B that direct interconnection will occur in Macon pursuant to the requirement in Section IV(A) that any direct interconnection points must be identified.

If indirect interconnection were not permitted by the ICAs, there would be no reason for the parties to have included the first sentence of Section IV or the entirety of Subsection B governing indirect interconnection in the agreements. These items would simply have been excised from the final agreements, but they were not.

Other portions of the ICAs also show that traffic can be exchanged by direct and/or indirect interconnection. First, the recitals address the possibility of either direct or indirect interconnection. Second, Section IV(B) on indirect interconnection references the need to address traffic factors in Appendix A of the ICA, and Appendix A addresses these factors. Moreover, Appendix A references rates for both "Indirect Interconnection: $0.017" and "Direct Interconnection: $0.017"—rates provided in accordance with Section IV(B)(2) of the ICAs which specifically shows that the parties contemplated traffic could occur directly and/or indirectly: "*Indirect traffic* routed through a third-party tandem provider is subject to the same compensation calculation as that used for the *direct route* in both the Mobile to Land direction and the Land to Mobile direction." (Emphasis added.)

By agreeing to establish the direct interconnection facilities, Defendants have provided Plaintiff the means to route its originated traffic to Defendants without incurring third-party transit charges. As previously noted, this arrangement is not affected by the homing of Verizon Wireless's 478–391 NPA–NXX code or Alltel's

478–672 NPA–NXX code to Macon. Nothing in the ICAs, however, limits either party's right to route its traffic to the other party indirectly.

Based upon the multiple references in the ICAs to treatment, location, and compensation terms for direct and indirect interconnection arrangements, it is clear that the Commission had a rational basis for its conclusion that nothing in the ICAs provides that the existence of a direct interconnection between the parties precludes the exchange of traffic via indirect interconnection.

### 4. Virtual NXX

■ The term "virtual NXX" is defined by the FCC as a central office code that corresponds to a particular rate center but is assigned to a customer located in a different rate center. *See In re Developing a Unified Intercarrier Compensation Regime*, 16 FCC Rcd. 9610, 9652 at ¶ 115 n. 188, 2001 WL 455872, at *32, 2001 FCC LEXIS 2339, at *125 (Apr. 27, 2001). In two prior Commission dockets, the Commission rejected virtual NXX arrangements in the context of wireline competitive LECs. [1:08–CV–1438–CC, doc. no. 35–7 at 70.] The Commission used the ILEC's local calling area as the local geographic area in those two dockets. [1:08–CV–1437–CC doc. no. 28–7 at 64; 1:08–CV–1438–CC, doc. no. 35–7 at 70–71.] As the Commission recognized, however, FCC Rule 51.701(b)(2) defines the local calling area for calls between a LEC (such as PSTC) and a CMRS provider (such as Verizon Wireless or Alltel) as the MTA in which the LEC is located. *See Alma Commc'ns Co.*, 490 F.3d 619, *Atlas Tel. Co.*, 400 F.3d 1256. Therefore, as long as the network of a wireless caller is in the MTA of a wireline provider, as is true in these cases, no virtual NXX has been created. The Commission's decision that the rating and routing regimes at issue in

these cases do not produce virtual NXX arrangements is therefore supported by FCC rule, by federal case law, and by the most fundamental realities of mobile wireless service.

Under Plaintiff's proposed framework, a wireless customer's movement from one wireline local calling area to another would prevent him or her from ever having a local calling scope. There is nothing virtual about Defendants' networks or their customers. First, Defendants' customers have a community of interest within the PSTC local calling area. Second, Defendants have built-out networks that directly serve customers within Plaintiff's service area, including cell sites that provide coverage within Plaintiff's territory and dedicated transport facilities that connect with Plaintiff at the precise point of interconnection in Macon requested by Plaintiff. The fact that some calls to Verizon Wireless and Alltel numbers will happen to terminate outside of PSTC's service territory does not create a dialing disparity. It has nothing to do with virtual NXX and is not unique to Alltel's or Verizon Wireless's operation of its business. Because the Commission was neither arbitrary nor capricious in interpreting the ICAs and its own prior orders, and because Plaintiffs argument contradicts federal law, Plaintiff's virtual NXX argument fails.

### 5. Alternative Dispute Resolution

■ Although these two cases are similar in most regards, they differ slightly with respect to Plaintiff's claim that the Commission should have required the parties to participate in ADR. In the Verizon Wireless case, the Commission properly decided that, in the first instance, ADR was inappropriate because the ADR section of the Verizon ICA specifically states that it applies only to controversies or claims arising out of or relating to the ICA and the ICA does not address code load-

ing, the primary issue in the Verizon Wireless case. As noted earlier, code loading is an obligation on all carriers that exists regardless of whether the carriers have entered into an ICA. The Verizon Wireless dispute cannot, therefore, be said to have arisen from the ICA. PSTC submitted a proposed procedural schedule to the Commission for resolution of the merits of Verizon Wireless's complaint. Therefore, the Commission's finding that the PSTC acted inconsistently with any rights to ADR that it had was rational.

█ In the Alltel case, the parties did not enter into their ICA until almost two months after Alltel filed its Complaint with the Commission and, therefore, the ADR provision cannot apply because the dispute could not have arisen from the ICA. PSTC also filed a counterclaim before the Commission in the Alltel case thereby waiving any right to ADR it might have had. *See USA Payday Cash Advance Center # 1, Inc. v. Evans,* 281 Ga.App. 847, 849, 637 S.E.2d 418 (2006). The Commission rationally concluded that the request for ADR was not raised until prejudicially late i.e., in the briefing following the filing of the counterclaim, submission of testimony, and the evidentiary hearing.

In any event, even if the ADR provision applied generally to these cases, it specifically exempts actions for injunctive relief. The relief that Defendants sought before the Commission was equitable in nature, i.e., the prevention of PSTC's planned rating change in the Alltel case and the required loading of codes by PSTC in the Verizon Wireless case. In addition, Plaintiff could have initiated the ADR process if it believed the process applied, but it never did so. Section VIII(C) of the ICAs outlines how a party to the agreement requests dispute resolution. Plaintiff failed to follow this procedure, continued its defense before the Commission without asking for a stay to engage in dispute resolution, and with respect to the Verizon Wireless case actually drafted the procedural schedule the Commission followed.

Finally, the dispute resolution procedure in the ICAs provides that legal actions may be pursued if negotiations do not resolve the issue within sixty days. Almost a year elapsed while these matters were pending before the Commission. Therefore, even if the ADR provision applied to these disputes, the sixty-day time limit for engaging in ADR had long expired, thereby enabling either party in either case to bring a dispute to the Commission, a court, or another agency with appropriate jurisdiction to decide the matter. The Commission's finding that the ADR provision did not apply to these cases and, in addition, was waived by Plaintiff, had a rational basis and is affirmed by this Court.

**B. 47 C.F.R. § 20.11**

Plaintiff contends that the Commission's orders violate 47 C.F.R. § 20.11(a), which provides as follows: "A local exchange carrier must provide the type of interconnection reasonably requested by a mobile service licensee or carrier, within a reasonable time after the request, unless such interconnection is not technically feasible or economically reasonable." Plaintiff claims that the interconnection established in these cases is not economically reasonable for Plaintiff and criticizes the Commission for purportedly providing no analysis as to why the subject interconnection arrangements are economically reasonable. This argument ignores the fact that the interconnection facilities at issue in these cases were agreed to by Plaintiff and, as the Commission found, were established at the request of Plaintiff. Further, even though indirect interconnection is allowed per the ICAs, Plaintiff is not required to route its originated traffic to

Defendants indirectly. In any event, routing third party calls away from transiting PSTC's facilities is not prohibited by the interconnection agreements and, as the Commission found and the record demonstrates, is consistent with industry practice. PSTC has not demonstrated any right to control the routing of traffic or to receive access charges from third-party carriers for such traffic. Access charges are imposed for terminating, not transiting, traffic from other carriers, and calls from third parties to Alltel or Verizon Wireless are not destined for PSTC's customers and need not transit PSTC's facilities. As for traffic terminating to PSTC for which PSTC would be otherwise entitled to reciprocal compensation under the interconnection agreements, PSTC's own record evidence before the Commission did not demonstrate any reduction of traffic terminating to it following Alltel's re-home. Finally, as the Commission found, PSTC was not required to make any network changes, or incur any additional costs, as a result of the re-home.

■ Therefore, the Commission rationally determined, and this Court affirms under the "arbitrary or capricious" standard of review, that PSTC did not demonstrate any injury based on third-party originated or other traffic for which it would be entitled to recovery under the ICAs and did not demonstrate that the interconnection is "uneconomic" or unreasonable under 47 C.F.R. § 20.11. Because it is undisputed that the parties agreed to the direct interconnection facilities without resorting to statutory arbitration under Section 252 of the Act, and because indirect interconnection, in addition to direct interconnection, was incorporated into the ICAs, the Commission did not err in determining the voluntary agreement was economically reasonable.

### C. Georgia Contract Law

Plaintiff argues that the Commission violated Georgia contract law by failing to give effect to and correctly interpret the ICAs. This Court rejects that argument for the reasons stated previously in this Order. The Commission correctly interpreted and applied the ICAs in light of the plain wording of those agreements and applicable provisions of federal law. In particular, the Commission was correct to conclude that the parties did not intend to contract around federal law relating to local dialing parity in both cases and relating to code loading in the Verizon Wireless case. *See NuVox*, 2006 WL 2617123, at *18–19, 2006 U.S. Dist. LEXIS 65029, at *54–55.

### D. Georgia Administrative Procedure Act and Open Meetings Act

Although the Verified Complaint states no claim for relief on this ground, in the Statement of Facts portion of its Principal Brief on the Merits and at oral argument, Plaintiff asserted that the Commission violated the Georgia Administrative Procedure Act and the Georgia Open Meetings Act. The Commission's votes, however, were taken at open meetings, and the Commission's written orders properly memorialized those votes. As explained in the Commission's Orders on Reconsideration, in adopting the Commission Staff's recommendation, the Commission considered the merits of Plaintiff's Applications for Review. Consistent with the Staff recommendations it adopted, the written orders presented its reasons for adopting the hearing officer's conclusions. Plaintiff has not cited to any authority that prohibits the Commission from including in an order its reasons for adopting the conclusions reached by a hearing officer in an initial decision. In addition, O.C.G.A. § 50–13–17(a) provides that, when acting "on re-

view from the initial decision of [a hearing officer], the [Commission] shall have all the powers it would have in making the initial decision." Thus, the Commission is not constrained to the hearing officer's initial decision in issuing an order of the full Commission.

There was no violation of the Georgia Open Meetings Act in connection with the April 4, 2008 Commission orders. Further, in addressing PSTC's Motions for Reconsideration in its April 15, 2008 Administrative Session, the Commission ratified its prior order. That vote to ratify the order also took place in an open meeting of the Commission. There can be no question that the Commission's orders in the administrative proceeding complied with the Georgia Open Meetings Act.

### E. Permanent Injunction Standards

For the reasons set forth above, Plaintiff has failed to demonstrate the actual success on the merits required for a permanent injunction. Additionally, for the reasons set forth in the Court's Order of May 6, 2008, and adopted here, Plaintiff has not convinced the Court that it would suffer irreparable harm if a permanent injunction is not entered, and the ability to calculate monetary damages provided Plaintiff an adequate remedy at law. The harm to the public interest and to other parties if this Court granted Plaintiff's request for permanent injunctive relief outweighs any inconvenience to Plaintiff arising from this Court's denial. It is in the public interest that efficient and competitive telecommunications services exist through which any user can call any other user. *See* 47 U.S.C. §§ 151, 160 & 332(a)(3) (discussing policies of competition and nondiscrimination). Plaintiff has not shown that the extraordinary relief sought would aid the public interest.

## IV. CONCLUSION

For the reasons set forth above, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's request for injunctive relief in both of the above-styled cases, 1:08–CV–1437–CC and 1:08–CV–1438–CC, is **DENIED.** The Clerk is directed to enter final judgment in favor of Defendants in these cases.